# Exhibit A

**TO THE AFFIDAVIT OF SERVICE REGARDING HTC CORP.**



**Dominick Gattuso**

| | |
|---|---|
| **From:** | Dominick Gattuso |
| **Sent:** | Wednesday, October 05, 2011 3:31 PM |
| **To:** | 'David_Wiggins@htc.com' |
| **Cc:** | smoore@kelleydrye.com; 'Moriarty, James'; Swedock, Elizabeth |
| **Subject:** | RE: Monec Holding AG v. Motorola Mobility Inc. et al., C.A. No. 1:11-cv-00798-LPS |
| **Attachments:** | DI 1 Complaint Package.pdf; Monec - HTC Corp.pdf |

**Importance:**     High

Dave:

Pursuant to the agreement regarding service of HTC Corp., please find attached the summons directed to HTC Corp. as well as a copy of the complaint filed in this action. Please respond to this email to confirm your receipt of the foregoing documents and acceptance of service on behalf of HTC Corp.

Thank you,

Dominick

Dominick T. Gattuso
**Proctor Heyman LLP**
300 Delaware Ave., Suite 200
Wilmington, DE 19801
(302) 472-7300 (Main)
(302) 472-7311 (Direct)
(302) 472-7320 (Fax)
(302) 559-6644 (Mobile)
www.proctorheyman.com



PROCTOR HEYMAN LLP

ATTORNEYS AT LAW

------------------------------------

This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.  Proctor Heyman LLP does not render tax advice.

**From:** David_Wiggins@htc.com [mailto:David_Wiggins@htc.com]
**Sent:** Tuesday, October 04, 2011 4:57 PM
**To:** Dominick Gattuso
**Cc:** smoore@kelleydrye.com
**Subject:** RE: Monec Holding AG v. Motorola Mobility Inc. et al., C.A. No. 1:11-cv-00798-LPS

Dominick,

The stipulation looks fine. You have my authority to sign for me electronically. My address is:

13920 SE Eastgate Way, Suite 400
Bellevue, WA 98005

Thanks,
Dave

---

**From:** Dominick Gattuso [mailto:DGattuso@proctorheyman.com]
**Sent:** Tuesday, October 04, 2011 12:48 PM
**To:** David Wiggins
**Cc:** smoore@kelleydrye.com
**Subject:** RE: Monec Holding AG v. Motorola Mobility Inc. et al., C.A. No. 1:11-cv-00798-LPS

Dave:

A stipulation is attached for your review.  Please provide me with your address (to add to the stipulation) and your authority to add your electronic signature and file the stipulation on behalf of the HTC/Exedea entities.

Thank you,

Dominick

Dominick T. Gattuso
**Proctor Heyman LLP**
300 Delaware Ave., Suite 200
Wilmington, DE 19801
(302) 472-7300 (Main)
(302) 472-7311 (Direct)
(302) 472-7320 (Fax)
(302) 559-6644 (Mobile)
www.proctorheyman.com



ATTORNEYS AT LAW

---

This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments. Proctor Heyman LLP does not render tax advice.

---

**From:** David_Wiggins@htc.com [mailto:David_Wiggins@htc.com]
**Sent:** Tuesday, October 04, 2011 3:08 PM
**To:** Dominick Gattuso

**Cc:** smoore@kelleydrye.com
**Subject:** RE: Monec Holding AG v. Motorola Mobility Inc. et al., C.A. No. 1:11-cv-00798-LPS

Dominick,

These terms are acceptable to the HTC entities.

Thank you,
Dave

---

**From:** Dominick Gattuso [mailto:DGattuso@proctorheyman.com]
**Sent:** Tuesday, October 04, 2011 11:59 AM
**To:** David Wiggins
**Cc:** smoore@kelleydrye.com
**Subject:** RE: Monec Holding AG v. Motorola Mobility Inc. et al., C.A. No. 1:11-cv-00798-LPS

Dave:

Monec Holdings will agree to extend the date for HTC Corp., HTC America, Inc. and Exedea, Inc. to respond to the complaint until November 18, 2011 on condition that (a) HTC accepts service on behalf of HTC Corp., and (b) HTC Corp., HTC America, Inc. and Exedea, Inc. agree not to file for reexam prior to December 6.  If these terms are acceptable, I will put together a stipulation for your signature.

Thank you,

Dominick


Dominick T. Gattuso
**Proctor Heyman LLP**
300 Delaware Ave., Suite 200
Wilmington, DE 19801
(302) 472-7300 (Main)
(302) 472-7311 (Direct)
(302) 472-7320 (Fax)
(302) 559-6644 (Mobile)
www.proctorheyman.com



PROCTOR HEYMAN LLP
ATTORNEYS AT LAW

---

This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.  Proctor Heyman LLP does not render tax advice.

**From:** David_Wiggins@htc.com [mailto:David_Wiggins@htc.com]
**Sent:** Tuesday, October 04, 2011 10:29 AM
**To:** Dominick Gattuso
**Cc:** smoore@kelleydrye.com
**Subject:** RE: Monec Holding AG v. Motorola Mobility Inc. et al., C.A. No. 1:11-cv-00798-LPS

Dominick,

Other than clarifying the reexam date, this is essentially the same deal that HTC already turned down.  In order for the HTC entities to be able to come to an agreement, Monec would need to either increase the extension by 2 weeks or decrease the reexam prohibition by 2 weeks.  Also, by agreeing not to "seek" reexam, I assume that only precludes HTC from filing one before the specified date.  Please confirm my understanding is correct.

Thanks,
Dave

**From:** Dominick Gattuso [mailto:DGattuso@proctorheyman.com]
**Sent:** Tuesday, October 04, 2011 6:01 AM
**To:** David Wiggins
**Cc:** Moore, Steven J.
**Subject:** FW: Monec Holding AG v. Motorola Mobility Inc. et al., C.A. No. 1:11-cv-00798-LPS

Dave:

To clarify my earlier point, please confirm that the HTC entities and Exedea agree to the conditions below, including the prohibition on seeking reexam. prior to December 20, 2011.

Thank you,

Dominick

Dominick T. Gattuso
**Proctor Heyman LLP**
300 Delaware Ave., Suite 200
Wilmington, DE 19801
(302) 472-7300 (Main)
(302) 472-7311 (Direct)
(302) 472-7320 (Fax)
(302) 559-6644 (Mobile)
www.proctorheyman.com



--------------------------------
This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.  Proctor Heyman LLP does not render tax advice.

**From:** Dominick Gattuso
**Sent:** Tuesday, October 04, 2011 8:50 AM
**To:** 'David_Wiggins@htc.com'
**Cc:** Moore, Steven J.
**Subject:** Monec Holding AG v. Motorola Mobility Inc. et al., C.A. No. 1:11-cv-00798-LPS

Dave:

Monec Holdings is willing to agree to an extension of the time to answer, move or otherwise respond to the complaint in this action <u>until November 18, 2011</u> along the lines of what we discussed yesterday.  Specifically, in exchange for the extension, HTC agrees (a) that it will accept service on behalf of HTC Corp., and (b) that it will not seek reexam. of the patent at issue in this litigation on or before December 20, 2011.  Please let me know if HTC will agree to these conditions.

Thank you,

Dominick


Dominick T. Gattuso
**Proctor Heyman LLP**
300 Delaware Ave., Suite 200
Wilmington, DE 19801
(302) 472-7300 (Main)
(302) 472-7311 (Direct)
(302) 472-7320 (Fax)
(302) 559-6644 (Mobile)
www.proctorheyman.com



PROCTOR HEYMAN LLP
ATTORNEYS AT LAW

------------------------------------
This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.  Proctor Heyman LLP does not render tax advice.


CONFIDENTIALITY NOTE : The information in this e-mail is confidential and privileged; it is intended for use solely by the individual or entity named as the recipient hereof. Disclosure, copying, distribution, or use of the contents of this e-mail by persons other than the intended recipient is strictly prohibited and may violate applicable laws. If you have received this e-mail in error, please delete the original message and notify us by return email or collect call immediately. Thank you. HTC Corporation

CONFIDENTIALITY NOTE : The information in this e-mail is confidential and privileged; it is intended for

use solely by the individual or entity named as the recipient hereof. Disclosure, copying, distribution, or use of the contents of this e-mail by persons other than the intended recipient is strictly prohibited and may violate applicable laws. If you have received this e-mail in error, please delete the original message and notify us by return email or collect call immediately. Thank you. HTC Corporation

CONFIDENTIALITY NOTE : The information in this e-mail is confidential and privileged; it is intended for use solely by the individual or entity named as the recipient hereof. Disclosure, copying, distribution, or use of the contents of this e-mail by persons other than the intended recipient is strictly prohibited and may violate applicable laws. If you have received this e-mail in error, please delete the original message and notify us by return email or collect call immediately. Thank you. HTC Corporation

# Exhibit B

**TO THE AFFIDAVIT OF SERVICE REGARDING HTC CORP.**

**Dominick Gattuso**

| From: | David_Wiggins@htc.com |
|---|---|
| Sent: | Wednesday, October 05, 2011 4:45 PM |
| To: | Dominick Gattuso |
| Cc: | smoore@kelleydrye.com; JMoriarty@KelleyDrye.com; ESwedock@KelleyDrye.com |
| Subject: | RE: Monec Holding AG v. Motorola Mobility Inc. et al., C.A. No. 1:11-cv-00798-LPS |

Dominick,

I confirm receipt and acceptance of service on behalf of HTC Corp.  As we agreed, the date for the HTC entities to answer or otherwise respond to the complaint is extended to Nov. 18, 2011.

Regards,
Dave

**From:** Dominick Gattuso [mailto:DGattuso@proctorheyman.com]
**Sent:** Wednesday, October 05, 2011 12:31 PM
**To:** David Wiggins
**Cc:** smoore@kelleydrye.com; Moriarty, James; Swedock, Elizabeth
**Subject:** RE: Monec Holding AG v. Motorola Mobility Inc. et al., C.A. No. 1:11-cv-00798-LPS
**Importance:** High

Dave:

Pursuant to the agreement regarding service of HTC Corp., please find attached the summons directed to HTC Corp. as well as a copy of the complaint filed in this action.  Please respond to this email to confirm your receipt of the foregoing documents and acceptance of service on behalf of HTC Corp.

Thank you,

Dominick

Dominick T. Gattuso
**Proctor Heyman LLP**
300 Delaware Ave., Suite 200
Wilmington, DE 19801
(302) 472-7300 (Main)
(302) 472-7311 (Direct)
(302) 472-7320 (Fax)
(302) 559-6644 (Mobile)
www.proctorheyman.com



PROCTOR HEYMAN LLP
A T T O R N E Y S   A T   L A W

------------------------------------
This message is sent by a law firm and may contain information that is privileged or confidential. If you received this

1

transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.  Proctor Heyman LLP does not render tax advice.

---

**From:** David_Wiggins@htc.com [mailto:David_Wiggins@htc.com]
**Sent:** Tuesday, October 04, 2011 4:57 PM
**To:** Dominick Gattuso
**Cc:** smoore@kelleydrye.com
**Subject:** RE: Monec Holding AG v. Motorola Mobility Inc. et al., C.A. No. 1:11-cv-00798-LPS

Dominick,

The stipulation looks fine.  You have my authority to sign for me electronically.  My address is:

13920 SE Eastgate Way, Suite 400
Bellevue, WA  98005

Thanks,
Dave

---

**From:** Dominick Gattuso [mailto:DGattuso@proctorheyman.com]
**Sent:** Tuesday, October 04, 2011 12:48 PM
**To:** David Wiggins
**Cc:** smoore@kelleydrye.com
**Subject:** RE: Monec Holding AG v. Motorola Mobility Inc. et al., C.A. No. 1:11-cv-00798-LPS

Dave:

A stipulation is attached for your review.  Please provide me with your address (to add to the stipulation) and your authority to add your electronic signature and file the stipulation on behalf of the HTC/Exedea entities.

Thank you,

Dominick

Dominick T. Gattuso
**Proctor Heyman LLP**
300 Delaware Ave., Suite 200
Wilmington, DE 19801
(302) 472-7300 (Main)
(302) 472-7311 (Direct)
(302) 472-7320 (Fax)
(302) 559-6644 (Mobile)
www.proctorheyman.com


PROCTOR HEYMAN LLP
ATTORNEYS AT LAW

2

---------------------------------

This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.  Proctor Heyman LLP does not render tax advice.

---

**From:** David_Wiggins@htc.com [mailto:David_Wiggins@htc.com]
**Sent:** Tuesday, October 04, 2011 3:08 PM
**To:** Dominick Gattuso
**Cc:** smoore@kelleydrye.com
**Subject:** RE: Monec Holding AG v. Motorola Mobility Inc. et al., C.A. No. 1:11-cv-00798-LPS

Dominick,

These terms are acceptable to the HTC entities.

Thank you,
Dave

---

**From:** Dominick Gattuso [mailto:DGattuso@proctorheyman.com]
**Sent:** Tuesday, October 04, 2011 11:59 AM
**To:** David Wiggins
**Cc:** smoore@kelleydrye.com
**Subject:** RE: Monec Holding AG v. Motorola Mobility Inc. et al., C.A. No. 1:11-cv-00798-LPS

Dave:

Monec Holdings will agree to extend the date for HTC Corp., HTC America, Inc. and Exedea, Inc. to respond to the complaint until November 18, 2011 on condition that (a) HTC accepts service on behalf of HTC Corp., and (b) HTC Corp., HTC America, Inc. and Exedea, Inc. agree not to file for reexam prior to December 6.  If these terms are acceptable, I will put together a stipulation for your signature.

Thank you,

Dominick


Dominick T. Gattuso
**Proctor Heyman LLP**
300 Delaware Ave., Suite 200
Wilmington, DE 19801
(302) 472-7300 (Main)
(302) 472-7311 (Direct)
(302) 472-7320 (Fax)
(302) 559-6644 (Mobile)
www.proctorheyman.com



PROCTOR HEYMAN LLP

ATTORNEYS AT LAW

This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments. Proctor Heyman LLP does not render tax advice.

**From:** David_Wiggins@htc.com [mailto:David_Wiggins@htc.com]
**Sent:** Tuesday, October 04, 2011 10:29 AM
**To:** Dominick Gattuso
**Cc:** smoore@kelleydrye.com
**Subject:** RE: Monec Holding AG v. Motorola Mobility Inc. et al., C.A. No. 1:11-cv-00798-LPS

Dominick,

Other than clarifying the reexam date, this is essentially the same deal that HTC already turned down. In order for the HTC entities to be able to come to an agreement, Monec would need to either increase the extension by 2 weeks or decrease the reexam prohibition by 2 weeks. Also, by agreeing not to "seek" reexam, I assume that only precludes HTC from filing one before the specified date. Please confirm my understanding is correct.

Thanks,
Dave

**From:** Dominick Gattuso [mailto:DGattuso@proctorheyman.com]
**Sent:** Tuesday, October 04, 2011 6:01 AM
**To:** David Wiggins
**Cc:** Moore, Steven J.
**Subject:** FW: Monec Holding AG v. Motorola Mobility Inc. et al., C.A. No. 1:11-cv-00798-LPS

Dave:

To clarify my earlier point, please confirm that the HTC entities and Exedea agree to the conditions below, including the prohibition on seeking reexam. prior to December 20, 2011.

Thank you,

Dominick

Dominick T. Gattuso
**Proctor Heyman LLP**
300 Delaware Ave., Suite 200
Wilmington, DE 19801
(302) 472-7300 (Main)
(302) 472-7311 (Direct)
(302) 472-7320 (Fax)
(302) 559-6644 (Mobile)
www.proctorheyman.com

4



This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments. Proctor Heyman LLP does not render tax advice.

**From:** Dominick Gattuso
**Sent:** Tuesday, October 04, 2011 8:50 AM
**To:** 'David_Wiggins@htc.com'
**Cc:** Moore, Steven J.
**Subject:** Monec Holding AG v. Motorola Mobility Inc. et al., C.A. No. 1:11-cv-00798-LPS

Dave:

Monec Holdings is willing to agree to an extension of the time to answer, move or otherwise respond to the complaint in this action until November 18, 2011 along the lines of what we discussed yesterday. Specifically, in exchange for the extension, HTC agrees (a) that it will accept service on behalf of HTC Corp., and (b) that it will not seek reexam. of the patent at issue in this litigation on or before December 20, 2011. Please let me know if HTC will agree to these conditions.

Thank you,

Dominick

Dominick T. Gattuso
**Proctor Heyman LLP**
300 Delaware Ave., Suite 200
Wilmington, DE 19801
(302) 472-7300 (Main)
(302) 472-7311 (Direct)
(302) 472-7320 (Fax)
(302) 559-6644 (Mobile)
www.proctorheyman.com



This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments. Proctor Heyman LLP does not render tax advice.

CONFIDENTIALITY NOTE : The information in this e-mail is confidential and privileged; it is intended for use solely by the individual or entity named as the recipient hereof. Disclosure, copying, distribution, or use of the contents of this e-mail by persons other than the intended recipient is strictly prohibited and may violate applicable laws. If you have received this e-mail in error, please delete the original message and notify us by return email or collect call immediately. Thank you. HTC Corporation

CONFIDENTIALITY NOTE : The information in this e-mail is confidential and privileged; it is intended for use solely by the individual or entity named as the recipient hereof. Disclosure, copying, distribution, or use of the contents of this e-mail by persons other than the intended recipient is strictly prohibited and may violate applicable laws. If you have received this e-mail in error, please delete the original message and notify us by return email or collect call immediately. Thank you. HTC Corporation

CONFIDENTIALITY NOTE : The information in this e-mail is confidential and privileged; it is intended for use solely by the individual or entity named as the recipient hereof. Disclosure, copying, distribution, or use of the contents of this e-mail by persons other than the intended recipient is strictly prohibited and may violate applicable laws. If you have received this e-mail in error, please delete the original message and notify us by return email or collect call immediately. Thank you. HTC Corporation

CONFIDENTIALITY NOTE : The information in this e-mail is confidential and privileged; it is intended for use solely by the individual or entity named as the recipient hereof. Disclosure, copying, distribution, or use of the contents of this e-mail by persons other than the intended recipient is strictly prohibited and may violate applicable laws. If you have received this e-mail in error, please delete the original message and notify us by return email or collect call immediately. Thank you. HTC Corporation

# Exhibit C

**TO THE AFFIDAVIT OF SERVICE REGARDING HTC CORP.**

AO 440 (Rev. 12/09)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the

### District of Delaware

| | | |
|---|---|---|
| MONEC HOLDING AG | ) | |
| | ) | |
| _Plaintiff_ | ) | |
| | ) | Civil Action No.  **1 1 - 7 9 8** |
| v. | ) | |
| MOTOROLA MOBILITY, INC., SAMSUNG | ) | |
| ELECTRONICS AMERICA, INC. et al | ) | |
| _Defendant_ | ) | |

## SUMMONS IN A CIVIL ACTION

To: _(Defendant's name and address)_  HTC Corp.
23 Xinghau Road
Taoyuan City
Taoyuan 330, Taiwan, R.O.C.

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:     Dominick T. Gattuso (#3630)
Proctor Heyman LLP
300 Delaware Ave., Suite 200
Wilmington, DE 19801
(302) 472-7300

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

CLERK OF COURT

Date:  _SEP 1 2 2011_ _____          _____
_Signature of Clerk or Deputy Clerk_

AO 440 (Rev. 12/09)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

    ❑ I personally served the summons on the individual at *(place)* _____

                                on *(date)* _____ ; or

    ❑ I left the summons at the individual's residence or usual place of abode with *(name)* _____

                               , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

    ❑ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

                                on *(date)* _____ ; or

    ❑ I returned the summons unexecuted because _____ ; or

    ❑ Other *(specify):*




My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00   .

I declare under penalty of perjury that this information is true.


Date: _____        _____

                                          *Server's signature*

                                  _____

                                  *Printed name and title*

                                  _____

                                  *Server's address*

Additional information regarding attempted service, etc:

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MONEC HOLDING AG, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. _____ |
| | : | |
| MOTOROLA MOBILITY, INC., | : | |
| SAMSUNG ELECTRONICS AMERICA, | : | JURY TRIAL DEMANDED |
| INC., SAMSUNG ELECTRONICS, INC., | : | |
| HTC CORP., HTC AMERICA, INC., | : | |
| and EXEDEA, INC. | : | |
| | : | |
| Defendants. | : | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Monec Holding AG ("MONEC"), by and through its undersigned counsel, as and for its Complaint for patent infringement against defendants Motorola Mobility, Inc. ("Motorola Mobility"), Samsung Electronics America, Inc. ("SEA"), Samsung Electronics, Inc., ("Samsung Electronics") (SEA and Samsung Electronics are collectively referred to herein as the "Samsung Defendants"), HTC Corp., ("HTC"), HTC America, Inc., ("HTC America"), and Exedea, Inc. (Exedea") (HTC, HTC America, and Exedea are collectively referred to herein as the "HTC Defendants") alleges as follows:

## THE PARTIES

1.    MONEC is a corporation organized and existing under the laws of Switzerland with a principal place of business located at Galgenfeldweg 18 CH-3006 Berne Switzerland.

2.    Upon information and belief, Motorola Mobility is a corporation organized under the laws of the State of Delaware with a principal place of business located at 600 North U.S. Highway 45, Libertyville, Illinois 60048. Motorola Mobility is in the business of designing,

manufacturing, and selling, among other things, smartphones and tablet computers, throughout the United States.

3.    Upon information and belief Samsung Electronics is a corporation organized under the laws of Korea, with its principal place of business located at 416 Maetan-3dong, Yeongtong-gu, Suwon-City, Gyeonggi-do, Korea 443-742. Upon further information and belief Samsung Eletronics is the parent of SEA. Samsung Electronics is in the business of designing, manufacturing, importing into the United States, and selling, among other things, smartphones and tablet computers, throughout the United States.

4.    Upon information and belief, SEA is a Corporation organized under the laws of the State of New York with a principal place of business located at 105 Challenger Road, Ridgefield Park, New Jersey 07660. Upon further information and belief SEA is a direct and wholly owned subsidiary of Samsung Electronics. SEA markets and sells, among other things, smartphones and tablet computers, throughout the United States.

5.    Upon Information and belief HTC is a corporation organized under the laws of Taiwan with its principal place of business located at 23 Xinghau Road, Taoyuan City, Taoyuan 330, Taiwan, R.O.C. Upon further information and belief HTC is the parent of HTC America and Exedea. HTC is in the business of designing, manufacturing, importing into the United States, and selling, among other things, smartphones and tablet computers, throughout the United States.

6.    Upon information and belief HTC America is a corporation organized under the laws of the State of Texas with a principal place of business located at 13920 SE Eastgate Way, Suite 400, Bellevue, Washington 98005. Upon further information and belief HTC America is a subsidiary of HTC. HTC America supports HTC's United States operations by, among other things, marketing and selling smartphones and tablet computers, throughout the United States.

7.     Upon information and belief Exedea is a corporation organized under the laws of the state of Texas, with a principal place of business located at 5950 Corporate Drive, Houston, Texas 77036. Upon further information and belief Exedea is a subsidiary of HTC. Exedea is in the business of importing, selling, and distributing mobile communication devices in the United States.

## JURISDICTION AND VENUE

8.     This action arises under the Patent Laws of the United States, 35 U.S.C. § 271 *et seq.* This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

9.     This Court has personal jurisdiction over Motorola Mobility, the Samsung Defendants and the HTC Defendants (collectively, "Defendants") because Defendants have established minimum contacts with the forum state of Delaware. Defendants, either directly or through third-parties, manufacture and assemble products that are and have been offered for sale, sold, purchased and used within the state of Delaware. In addition, Defendants regularly place their products within the stream of commerce, with the knowledge and/or understanding that such products will be sold in Delaware. Accordingly, Defendants have purposefully availed themselves of the benefits of the state of Delaware and the exercise of jurisdiction over Defendants does not offend traditional notions of fair play and substantial justice.

10.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and (c) and 28 U.S.C. §§ 1400(b) inasmuch as each Defendant has committed acts within this judicial district giving rise to this action and does business in this district, including offering for sale, making sales and providing service and support to their respective customers with respect to certain of Defendants' respective products which infringe one or more claims of United States Patent No. 6,335,678.

3

## FACTS COMMON TO ALL COUNTS

11.     MONEC is a leading innovator for mobile, globally usable communication solutions.

12..     MONEC is the innovator of a unitary, flat, and frame-shaped electronic mobile network computing device with virtual keyboard capability, which allows for multiple uses including internet access, email retrieval, videoconferencing, navigation, and book procurement, named the Voyager, which sold in Europe circa 2000.

13.     MONEC invests in the development and marketing of technology utilized for the transmission of data to mobile electronic communication systems.

14.     On January 1, 2002, United States Patent No. 6,335,678 (the " '678 Patent"), entitled ELECTRONIC DEVICE, PREFERABLY AN ELECTRONIC BOOK, duly and legally issued to Theodor Heutschi.  MONEC is the owner by assignment of the '678 Patent.  A true and correct copy of the '678 Patent is attached hereto as Exhibit A.

15.     A request for Ex Parte Reexamination of the '678 Patent was filed on November 12, 2009.

16.     The United States Patent and Trademark Office issued, on May 10, 2011, an Ex Parte Reexamination Certificate to MONEC, as assignee of Theodor Heutschi.  A true and correct copy of the Ex Parte Reexamination Certificate is attached hereto as Exhibit B.

17.     Reexamined '678 Patent embodiments include a generally flat electronic device housing a processing system to communicate, store, interact with and display digital media transferred from a peripheral device over a multiband radio network station incorporating a GSM/SIM chip and manipulated by various input means, including a touch-screen.

4

18.     By virtue of the assignment of the '678 Patent from Theodor Heutschi to MONEC, MONEC owns the entire right, title, and interest in and to the '678 Patent, including the right to bring this action.

19.     The Reexamined '678 Patent is valid and enforceable.

20.     Assuming the payment of all maintenance fees, the Reexamined '678 Patent will expire on February 20, 2019.

## COUNT I
## Infringement of United States Patent No. 6,335,678 Against Motorola Mobility

21.     MONEC repeats and realleges the allegations of paragraphs 1-20 as if set forth at length herein.

22.     Motorola Mobility manufactures, markets and/or sells smartphones and tablet computers in this judicial district and throughout the United States.

23.     The smartphones made, used, sold, and/or offered for sale by Motorola Mobility include, among others, the 4G Atrix.

24.     The 4G Atrix infringes one or more claims, including claim 1, of the Reexamined '678 Patent.

25.     Motorola Mobility also imports, makes, uses, sells, and/or offers for sale tablet computers, including the Motorola Xoom.

26.     Upon information and belief, Motorola Mobility presently offers and advertises upgrades to its existing Motorola Xoom tablet computers which upgrades result in the Motorola Xoom infringing one or more claims, including claim 1, of the Reexamined '678 Patent.

27.     Upon information and belief, in addition to the 4G Atrix and the Xoom, one or more other products imported into the United States, made, used, sold, and/or offered for sale by

Motorola Mobility (collectively the "Motorola Infringing Products") in Delaware and throughout United States, infringe one or more claims, including claim 1, of the Reexamined '678 Patent.

28.     Motorola Mobility is, and has been, making, using, selling, offering for sale, and/or importing the Motorola Infringing Products, alone and/or in combination with other Motorola Mobility products and services, within Delaware and elsewhere in the United States without authority or license of the Reexamined '678 Patent.

29.     Upon information and belief, Motorola Mobility has contributed to and/or induced and will continue to contribute to and/or induce the infringement of the Reexamined '678 Patent by others in Delaware and elsewhere in the United States.

30.     Upon information and belief, Motorola Mobility's infringement of the Reexamined '678 Patent has been and continues to be willful, entitling MONEC to enhanced damages pursuant to 35 U.S.C. § 284.

31.     As a result of Motorola Mobility's infringement of the Reexamined '678 Patent, MONEC has suffered injury to its business and property in an amount to be determined, and will continue to suffer damages in the future.

32.     Unless an injunction is issued enjoining Motorola Mobility and its officers, agents, servants, employees and attorneys, and all those persons in active concert or participation with it, from infringing the Reexamined '678 Patent, MONEC will be irreparably harmed.

33.     MONEC has no adequate remedy at law.

34.     Upon information and belief, with full knowledge of the '678 Patent, Motorola Mobility willfully and wantonly infringed the Reexamined '678 Patent in deliberate and intentional disregard of MONEC's rights, making this an exceptional case pursuant to 35 U.S.C. § 285.

## COUNT II
### Infringement of United States Patent No. 6,335,678 Against the Samsung Defendants

35.     MONEC repeats and realleges the allegations of paragraphs 1-34 as if set forth at length herein.

36.     Upon information and belief Samsung Electronics is the parent of SEA.  Upon further information and belief, Samsung Electronics makes, uses, sells, offers for sale and/or imports into the United States smartphones and tablet computers, which are used, sold, and offered for sale in Delaware and throughout the United States.

37.     Upon information and belief SEA is a subsidiary of Samsung Electronics.  SEA makes, uses, sells, offers for sale, and/or imports smartphones and tablet computers in Delaware and throughout the United States.

38.     The smartphones made, used, sold, offered for sale, and/or imported in the United States by the Samsung Defendants include, among others, the Infuse 4G.

39.     The Samsung Defendants also make, use, sell, offer for sale, and/or import tablet computers, including the Galaxy Tab.

40.     Both the Infuse 4G smartphone and the Galaxy Tab infringe one or more claims, including claim 1, of the Reexamined '678 Patent.

41.     Upon information and belief, in addition to the Infuse 4G smartphone and Galaxy Tab, one or more other products imported into the United States, made, used, sold, offered for sale, and/or imported by the Samsung Defendants (collectively the "Samsung Infringing Products") in Delaware and throughout United States, infringe one or more claims, including claim 1, of the Reexamined '678 Patent.

42.     The Samsung Defendants are, and have been, making, using, selling, offering for sale, and/or importing the Samsung Infringing Products, alone and/or in combination with other

7

products and services, within Delaware and elsewhere in the United States without authority or license of the Reexamined '678 Patent.

43.     Upon information and belief, the Samsung Defendants have contributed to and/or induced and will continue to contribute to and/or induce the infringement of the Reexamined '678 Patent by others in Delaware and elsewhere in the United States.

44.     Upon information and belief, the Samsung Defendants infringement of the Reexamined '678 Patent has been and continues to be willful, entitling MONEC to enhanced damages pursuant to 35 U.S.C. § 284.

45.     As a result of the Samsung Defendants infringement of the Reexamined '678 Patent, MONEC has suffered injury to its business and property in an amount to be determined, and will continue to suffer damages in the future.

46.     Unless an injunction is issued enjoining the Samsung Defendants and their respective officers, agents, servants, employees and attorneys, and all those persons in active concert or participation with them, from infringing the Reexamined '678 Patent, MONEC will be irreparably harmed.

47.     MONEC has no adequate remedy at law.

48.     Upon information and belief, with full knowledge of the '678 Patent, the Samsung Defendants willfully and wantonly infringed the Reexamined '678 Patent in deliberate and intentional disregard of MONEC's rights, making this an exceptional case pursuant to 35 U.S.C. § 285.

## COUNT III
### Infringement of United States Patent No. 6,335,678 Against The HTC Defendants

49. MONEC repeats and realleges the allegations of paragraphs 1-48 as if set forth at length herein.

50. Upon information and belief HTC Corp. is the parent of HTC America and Exedea.

51. HTC Corp. makes, uses, sells, offers for sale and/or imports into the United States smartphones and tablet computers, which are used, sold, and/or offered for sale in Delaware and throughout the United States.

52. Upon information and belief HTC America is a subsidiary of HTC Corp.

53. HTC America markets, sells, and/or offers for sale smartphones and tablet computers, in Delaware and throughout United States.

54. Upon information and belief Exedea is a subsidiary of HTC.

55. Exedea imports into the United States HTC smartphones and tablet computers and sells and/or offers sale of said smartphones and tablet computers in Delaware and throughout the United States.

56. The smartphones made, used, sold, offered for sale, and/or imported into the United States by the HTC Defendants include, among others, the ThunderBolt smartphone.

57. The HTC Defendants also make, use, sell, offer for sale, and/or import tablet computers, including the Jetstream.

58. Both the ThunderBolt smartphone and the Jetstream tablet computer infringe one or more claims, including claim 1, of the Reexamined '678 Patent.

59. Upon information and belief, in addition to the ThunderBolt smartphone and the Jetstream tablet computer, one or more other products manufactured, marketed, sold, offered for sale, and/or imported by the HTC Defendants (collectively the "HTC Infringing Products") in

Delaware and throughout the United States, infringe one or more claims, including claim 1, of the Reexamined '678 Patent.

60.     The HTC Defendants are and have been making, using, selling, offering for sale, and/or importing the HTC Infringing Products, alone and/or in combination with other HTC products and services, within Delaware and elsewhere in the United States without authority or license of the Reexamined '678 Patent.

61.     Upon information and belief, the HTC Defendants have contributed to and/or induced and will continue to contribute to and/or induce the infringement of the Reexamined '678 Patent by others in Delaware and elsewhere in the United States.

62.     Upon information and belief, the HTC Defendants' infringement of the Reexamined '678 Patent has been and continues to be willful, entitling MONEC to enhanced damages pursuant to 35 U.S.C. § 284.

63.     As a result of the HTC Defendants' infringement of the '678 Patent, MONEC has suffered injury to its business and property in an amount to be determined, and will continue to suffer damages in the future.

64.     Unless an injunction is issued enjoining the HTC Defendants and their respective officers, agents, servants, employees and attorneys, and all those persons in active concert or participation with them, from infringing the Reexamined '678 Patent, MONEC will be irreparably harmed.

65.     MONEC has no adequate remedy at law.

66.     Upon information and belief, with full knowledge of the '678 Patent, the HTC Defendants willfully and wantonly infringed the Reexamined '678 Patent in deliberate and

intentional disregard of MONEC'S rights, making this an exceptional case pursuant to 35 U.S.C. § 285.

## JURY DEMAND

MONEC demands a jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, MONEC prays for judgment and relief as follows:

A.      A declaration that Motorola Mobility, Inc. has infringed, is infringing, has induced and is inducing, and has contributed and is contributing to the infringement of one or more valid and enforceable claims of Reexamined U.S. Patent No. 6,335,678 (the "Patent-in-Suit");

B.      A declaration that Samsung Electronics has infringed, is infringing, has induced and is inducing, and has contributed and is contributing to the infringement of one or more valid and enforceable claims of the Patent-in-Suit;

C.      A declaration that Samsung Electronics America has infringed, is infringing, has induced and is inducing, and has contributed and is contributing to the infringement of one or more valid and enforceable claims of the Patent-in-Suit;

D.      A declaration that HTC Corp. has infringed, is infringing, has induced and is inducing, and has contributed and is contributing to the infringement of one or more valid and enforceable claims of the Patent-in-Suit;

E.      A declaration that HTC America has infringed, is infringing, has induced and is inducing, and has contributed and is contributing to the infringement of one or more valid and enforceable claims of the Patent-in-Suit;

11

F.     A declaration that Exedea, Inc. has infringed, is infringing, has induced and is inducing, and has contributed and is contributing to the infringement of one or more valid and enforceable claims of the Patent-in-Suit;

G.     A preliminary and permanent injunction enjoining Motorola Mobility, Inc., its officers, agents, servants, employees and attorneys, and all those persons in active concert or participation with them, from further infringement, inducing infringement, and contributing to infringement of the Patent-in-Suit;

H.     A preliminary and permanent injunction enjoining Samsung Electronics, its officers, agents, servants, employees and attorneys, and all those persons in active concert or participation with them, from further infringement, inducing infringement, and contributing to infringement of the Patent-in-Suit;

I.     A preliminary and permanent injunction enjoining Samsung Electronics America, its officers, agents, servants, employees and attorneys, and all those persons in active concert or participation with them, from further infringement, inducing infringement, and contributing to infringement of the Patent-in-Suit;

J.     A preliminary and permanent injunction enjoining HTC Corp., its officers, agents, servants, employees and attorneys, and all those persons in active concert or participation with them, from further infringement, inducing infringement, and contributing to infringement of the Patent-in-Suit;

K.     A preliminary and permanent injunction enjoining HTC Corp. America, its officers, agents, servants, employees and attorneys, and all those persons in active concert or participation with them, from further infringement, inducing infringement, and contributing to infringement of the Patent-in-Suit;

L. A preliminary and permanent injunction enjoining Exedea, Inc, its officers, agents, servants, employees and attorneys, and all those persons in active concert or participation with them, from further infringement, inducing infringement, and contributing to infringement of the Patent-in-Suit;

M. An award of damages in favor of MONEC and against Motorola Mobility, Inc. sufficient to fully compensate MONEC for Motorola Mobility, Inc.'s infringement of the Patent-in-Suit, and an assessment of prejudgment interest and post-judgment interest;

N. An award of damages in favor of MONEC and against Samsung Electronics sufficient to fully compensate MONEC for Samsung Electronic's infringement of the Patent-in-Suit, and an assessment of prejudgment interest and post-judgment interest;

O. An award of damages in favor of MONEC and against Samsung Electronics America sufficient to fully compensate MONEC for Samsung Electronic America's infringement of the Patent-in-Suit, and an assessment of prejudgment interest and post-judgment interest;

P. An award of damages in favor of MONEC and against HTC Corp. sufficient to fully compensate MONEC for HTC Corp.'s infringement of the Patent-in-Suit, and an assessment of prejudgment interest and post-judgment interest;

Q. An award of damages in favor of MONEC and against HTC America sufficient to fully compensate MONEC for HTC America's infringement of the Patent-in-Suit, and an assessment of prejudgment interest and post-judgment interest;

R. An award of damages in favor of MONEC and against Exedea, Inc. sufficient to fully compensate MONEC for Exedea, Inc.'s infringement of the Patent-in-Suit, and an assessment of prejudgment interest and post-judgment interest;

S.     A finding by the Court that Motorola Mobility, Inc.'s infringement of the Patent-in-Suit is and has been willful, justifying an award of enhanced damages pursuant to 35 U.S.C. § 284;

T.     A finding by the Court that Samsung Electronics' infringement of the Patent-in-Suit is and has been willful, justifying an award of enhanced damages pursuant to 35 U.S.C. § 284;

U.     A finding by the Court that Samsung Electronics America's infringement of the Patent-in-Suit is and has been willful, justifying an award of enhanced damages pursuant to 35 U.S.C. § 284;

V.     A finding by the Court that HTC Corp.'s infringement of the Patent-in-Suit is and has been willful, justifying an award of enhanced damages pursuant to 35 U.S.C. § 284;

W.     A finding by the Court that HTC America's infringement of the Patent-in-Suit is and has been willful, justifying an award of enhanced damages pursuant to 35 U.S.C. § 284;

X.     A finding by the Court that Exedea's infringement of the Patent-in-Suit is and has been willful, justifying an award of enhanced damages pursuant to 35 U.S.C. § 284;

Y.     Trebling the compensatory damages due MONEC;

Z.     A finding by the Court that this is an exceptional case under 35 U.S.C. § 285 and an award to MONEC of its attorneys' fees, costs and expenses in this action;

AA.     An order: (1) directing each of Motorola Mobility, Inc., Samsung Electronics, Samsung Electronics, Inc, HTC Corp., HTC America, and Exedea, Inc. to file with this Court and serve upon MONEC within 30 days of service of the injunction, a report, in writing and under oath, setting forth in detail the manner in which each of Motorola Mobility, Inc., Samsung Electronics, Samsung Electronics, Inc, HTC Corp., HTC America, and Exedea, Inc. has

complied with the injunction and any further orders of the Court; (2) directing each of Motorola Mobility, Inc., Samsung Electronics, Samsung Electronics, Inc, HTC Corp., HTC America, and Exedea, Inc. account for all benefits and monies realized as a result of their respectful wrongful conduct; and (3) upon production of such accounting, rendering judgment against each of Motorola Mobility, Inc., Samsung Electronics, Samsung Electronics, Inc, HTC Corp., HTC America, and Exedea, Inc. for the amount shown due and the cost of accounting;

BB.     A constructive trust be imposed on all proceeds, assets, and benefits accruing to each of Motorola Mobility, Inc., Samsung Electronics, Samsung Electronics, Inc, HTC Corp., HTC America, and Exedea, Inc. as a result of their respective wrongful conduct.

CC.     Such other and further relief as the Court deems just and equitable.

PROCTOR HEYMAN LLP

/s/ Dominick T. Gattuso
Dominick T. Gattuso (# 3630)
E-mail: dgattuso@proctorheyman.com
300 Delaware Ave., Suite 200
Wilmington, DE 19801
(302) 472-7300

Attorneys for Monec Holding AG

OF COUNSEL:

KELLEY DRYE & WARREN LLP
Steven J. Moore
E-mail: smoore@kelleydrye.com
400 Atlantic Street
Stamford, CT 06901

Dated: September 9, 2011

# EXHIBIT A

US006335678B1

## (12) United States Patent
Heutschi

(10) Patent No.: **US 6,335,678 B1**
(45) Date of Patent: **Jan. 1, 2002**

(54) ELECTRONIC DEVICE, PREFERABLY AN ELECTRONIC BOOK

(75) Inventor: Theodor Heutschi, Lohn (CH)

(73) Assignee: Monec Holding AG, Lohn (CH)

(*) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: 09/403,500

(22) PCT Filed: Feb. 20, 1999

(86) PCT No.: PCT/CH99/00084

§ 371 Date: Oct. 22, 1999

§ 102(e) Date: Oct. 22, 1999

(87) PCT Pub. No.: WO99/44144

PCT Pub. Date: Sep. 2, 1999

(30)     Foreign Application Priority Data

Feb. 26, 1998   (CH) ............................................. 0459/98

(51) Int. Cl.⁷ ................................................... G08I 1/00
(52) U.S. Cl. ............................ 340/286.02; 340/286.01; 455/11.1; 455/556; 345/901; 345/507
(58) Field of Search ........................ 345/286.02, 286.01, 345/173, 507, 901; 455/11.1, 556, 566, 562

(56)            References Cited

U.S. PATENT DOCUMENTS

5,497,339 A * 3/1996 Bernard ...................... 708/109

| | | | |
|---|---|---|---|
| 5,515,305 A | * | 5/1996 | Register et al. ............. 708/145 |
| 5,941,648 A | * | 8/1999 | Robinson et al. ............ 400/82 |
| 5,956,048 A | * | 9/1999 | Gaston ....................... 345/507 |
| 5,847,698 A | * | 11/1999 | Reavey et al. ............. 345/173 |
| 5,983,073 A | * | 11/1999 | Ditzik ....................... 455/11.1 |
| 5,986,690 A | * | 11/1999 | Hendricks .................. 348/7 |

* cited by examiner

Primary Examiner—Edward Lefkowitz
(74) Attorney, Agent, or Firm—Wenderoth, Lind & Ponack, L.L.P.

(57)            ABSTRACT

An electronic device is provided with a housing, a display, input means, a microprocessor, a control arrangement, a memory, a power source, one or more interfaces for data exchange with a peripheral device. The display preferably provided as an LCD-display has dimensions such that with it approximately one page of a book can be illustrated at normal size, this display being integrated in a flat, frame-like housing. The input means for controlling the device are provided as a touch-screen in the display. A station for receiving and sending signals by way of a radio network allows the exchange of electronic data, such as for example E-mails, faxes, data from the Internet or the like, which can be visualized on the display. The electronic device according to the invention provides the considerable advantage that it is very light-weight and is easy to carry, can be used very universally and in this case has a relatively large display.

**13 Claims, 6 Drawing Sheets**



## FIG. 1



**U.S. Patent**      Jan. 1, 2002      Sheet 2 of 6      US 6,335,678 B1

**FIG. 2**



**U.S. Patent**         Jan. 1, 2002         Sheet 3 of 6         US 6,335,678 B1

## FIG. 3



## FIG. 4



## FIG. 5



## FIG. 6



## FIG. 7



## FIG. 8



## FIG. 9



Case 1:11-cv-00798-LPS Document 20-1 Filed 10/06/11 Page 39 of 49 PageID #: 198
Case 1:11-cv-00798-UNA Document 1-1 Filed 09/09/11 Page 7 of 12 PageID #: 22

## FIG. 10



## FIG. 11

Case 1:11-cv-00798-LPS   Document 20-1   Filed 10/06/11   Page 40 of 49 PageID #: 199
Case 1:11-cv-00798-UNA   Document 1-1   Filed 09/09/11   Page 8 of 12 PageID #: 23

## FIG. 12



US 6,335,678 B1

## 1

### ELECTRONIC DEVICE, PREFERABLY AN ELECTRONIC BOOK

#### BACKGROUND OF THE INVENTION

The present invention relates to an electronic device, preferably an electronic book.

A known document EP-A 0390611 describes a book with a floppy disc as the memory. The mechanical part of this memory is sensitive to impacts, requires a great deal of space and is much too expensive. Consequently, these books are cumbersome and too bulky. In addition, one requires additional buttons for controls in order to operate the floppy disc.

Frequently, books of this type are based on the idea of a pocket calculator and have too many operating buttons. This is particularly apparent from the Patent Specification EP 0337401. In this case, a CD is proposed as the memory, which also requires mechanics and a laser for reading.

Also, the Patent Specification WO 87/01481 is based on an external card, in order to fill the memory with new information.

The Patent Specification U.S. Pat. No. 4,517,660 is based on a book, which comprises a greater number of buttons, in order to provide every conceivable operating variation, such as the selection of a certain word etc. Experience shows that only simple and user-friendly devices have long-term success in use and as regards sales.

All of the aforementioned Patent Specifications disclose an electronic book, such as one is accustomed to with a conventional book, namely with two pages. However, in practice it is such that only one page can be read at any one time.

#### SUMMARY OF THE INVENTION

In comparison therewith, an object of the present invention is to provide an electronic device according to the aforementioned type, which operates with the fewest possible components and is as simple as possible to operate. The electronic book should be a universal communication device, which the user can use at any time and everywhere.

The electronic device according to the invention provides the considerable advantage that it may have a very light and easily portable construction, can be used very universally and at the same time has a relatively large display.

This device is suitable for being designed in an advantageous construction as an electronic book with the representation of only one book page. Consequently, it becomes easier to carry, more economical and, when not in use and when being carried, can be stored in a holder or a case.

It is easy to imagine that anyone, instead of purchasing a newspaper or magazine at a kiosk in the morning, inserts a coin or credit card into an automatic machine and then chooses whether he wishes to have the magazine, a town plan, tourist information and/or a newspaper etc. stored on his personal electronic book. Such an automatic distributor can be erected at any location and can be programmed for example by way of a telephone line (cable, light waves or radio) or a television cable at any time with the newest information. The transmission of data from the automatic distributor to the electronic book is simplest by way of a plug, a cable or by way of a modulated electromagnetic wave, for example by an infra-red light beam or the radio network for telephone transmission. It is also conceivable that an internal, integrated communication unit is present, with the assistance of which, by way of the existing GSM

## 2

radio network (Global System for Mobile Communications) or via GPRS (General Packet Radio Systems)/EDGE (Enhanced Data rates for GSM Evolution) or by other transmission devices—for example satellites—book data, magazines, newspapers, travel guides, train time-tables, stock exchange data etc. can be stored directly in the electronic book.

The same type of transmission may be possible in a book shop, where in the same manner as in a kiosk, one or more books can be transferred to the memory of the electronic book. In this case, any computer or a television set can be used as the data storage unit.

The electronic book consists of a housing, a display, an electronic circuit, a memory, a receiver for data from the system, input means and a power source, which can be charged for example by means of solar cells or thermo-electric generators. The solar cell may be provided on the back of the display and thus have a sufficiently large surface in order to supply the integrated storage battery as the power source of the electronic book, with sufficient current and thus to ensure that the electronic book has great operating autonomy. It is provided that the housing is made from synthetic material, thus it is light, stable and economical to produce. As the internal memory, a solid memory is provided, which works without mechanical parts and for each new selection of newspapers etc. can once again be reloaded.

As the display, an LCD, which is constructed as a liquid crystal display, is particularly suitable. A well distributed background illumination is advantageously provided, in order that one can read the document without outside light, for example when lying in bed. It is also conceivable that the display is mechanical, in order to represent braille letters for blind people.

In a very advantageous form, the electronic device is equipped with a loudspeaker, a microphone and furthermore with a video camera. This makes it possible to hold video conferences with one or more participants by way of a telephone, television or radio connection. At the same time, the users can navigate on the internet and access and download data or information of any type.

The device can also be used with a speech control and a speech output. With this assistance, visually impaired people have the possibility of being able to move around in the network of the data company without outside help.

This invention provides both ecological as well as economic and ergonomic advantages. The conventional reading medium such as books, magazines, newspapers documents etc. consists of printed paper. The resources used for this are limited, as is known. In addition, printed paper is ill-suited for the storage or archiving of data. On the road or on journeys, respectively only a limited number of books or documents can be carried. A further problem is the topicality of the data. A great deal of information in books, newspapers, travel guides and other documents is out of date and unusable after a relatively short time. All these drawbacks have the result that the newspaper and book publishers can only sell their products by way of intermediate sales points, so-called newspaper stands and book shops. Thus, at any location in the world, the most recent information is available in seconds and can be transferred to the electronic book. The ergonomics and price advantages of the present invention exceed those of conventional print media many times.

In commercial use, the relevant information and data will be charged to the customer or reader (clearing). The billing

US 6,335,678 B1

3

can take place by way of a GSM chip cards SIM card, SET, credit card, micropayment or other suitable payment systems.

The book data loaded and stored on the E-book can only be opened and read with the personal PIN code on the GSM chip card (SIM card). This concept offers high protection against copying. If the data are copied onto a foreign device, they can neither be opened nor read without the associated GSM chip card (SIM card).

## BRIEF DESCRIPTION OF THE DRAWINGS

Preferred embodiments of the invention are illustrated in the accompanying drawings and described in detail with reference to the following description. In the drawings:

FIG. 1 is a block diagram of the total solution with interfaces to the internet;

FIG. 2 is a block diagram of the system for data transmission;

FIG. 3 is a block diagram of the electronic book;

FIG. 4 shows an electronic kiosk;

FIG. 5 shows an electronic book store;

FIG. 6 shows an electronic travel guide;

FIG. 7 shows a computer or TV set for data transmission;

FIG. 8 shows the electronic script for students;

FIG. 9 shows an electronic shopping catalogue;

FIG. 10 is a front view of an electronic device according to the invention;

FIG. 11 is a side view of the device according to FIG. 10; and

FIG. 12 is a block diagram of the device according to FIG. 10.

## DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENTS

The block diagram in FIG. 1 shows as an example of an electronic book store, which is connected to the Internet by an online interface. The various books, magazines, newspapers, documents are stored electronically in a data bank. The electronic book store has an accounting system, which allows the data supplier to charge for the data retrieved. The electronic data can be selected by means of a system, which may for example be a computer or a TV set, by way of the network and loaded into a specific memory. The system transmits the electronic data to a reading device (electronic book). The system and the electronic book have an accounting system and an interface, by which the data are transmitted. The electronic book has an autonomous solid memory, which can store a plurality of selected data. The electronic book has its own power supply and can therefore be used at any desired location. The data can be managed in the memory and retrieved by way of the input control. The output control supplies the memorized data optically, acoustically or by way of braille script to the user.

FIG. 2 is a block diagram of the system for data transmission, in which the various components are provided. The system consists of a screen with a touch-screen sensor and a driver for the visual output or control of an interface to the Internet and of an interface to the electronic book. The interfaces may consist of a plug, a cable or a modulated electromagnetic wave. The accounting can be controlled by way of a PIN code. The indication of time is controlled by a clock. The system may contain a money-introduction device or a credit card reader. The system can be connected by means of data selectors or by way of a microphone with

4

speech recognition and controlled so that any data can be selected and transmitted. A microprocessor controls the entire data flow by way of the program and data store. The power supply consists of a supply unit and an independent storage battery, which can be operated by a solar cell.

FIG. 3 shows a block diagram of an electronic device with an LCD screen with background illumination. The background illumination can be switched on optionally. This function is particularly helpful in poor lighting. Other techniques for displaying information are also conceivable, which offer the same effect. These could operate for example by means of different conductor layers applied one above the other to a glass plate. The layers can be controlled by means of target co-ordinates and illuminated.

The electronic device has an additionally incorporated touch-screen sensor for controlling operation. An interface for data transmission-from the installation in FIG. 2 to the electronic book of FIG. 3 is incorporated. The interfaces may consist of a plug, a cable or a modulated electromagnetic wave. The accounting may be controlled by way of a PIN code. The indication of time is controlled by a clock. The electronic book can be connected by way of a microphone and controlled by speech recognition so that any data can be selected in the memory and displayed on the LCD screen. All reading functions may be activated by way of speech input. The reading functions may also be activated by way of a conventional keyboard. A control by means of brain waves, which are picked up by way of suitable electrodes or sensors from the user's brain, is also conceivable. A further possibility for information output may be a braille script module or a loudspeaker, which is controlled by means of a speech synthesizer. A microprocessor controls the entire data flow by way of the program and data memory. The power supply consists of a supply unit and an autonomous storage battery, which can be operated by a solar cell. The electronic book can be adjusted or adapted individually to the requirements of the user. In order to achieve the greatest possible acceptance and user-friendliness for users, the electronic book is developed and constructed according to the newest ergonomic objectives.

As the input means, keys or a proximity switch may be provided, the latter advantageously operating inductively or capacitively, or operating by means of sound waves or infra-red scanning and which can be combined with the display, by a magnet which can be operated solely by the person who is in possession of the corresponding part and knows the functions. As the input means, an acoustic signal may also be provided, in which case the device can be tuned to a certain frequency, frequency spectrum or voice, or brain currents may also be used as the input means, in which case one attaches one or more detectors at defined points on the head and the input means can be controlled in accordance with the thoughts.

FIG. 4 shows an electronic kiosk (E-News stand), in which the user acquires a choice of the newest newspapers and magazines from the entire world, transmitted to his electronic book. The accounting for the relevant information is facilitated by means of a money-introduction device, a credit card acceptance or a PIN code.

FIG. 5 shows an electronic book store (E-book store), in which the user acquires a choice of books and documents, transmitted to his electronic book.

FIG. 6 shows an electronic travel guide (E-travel guide), in which the user can read the desired travel information (town plan, map, attractions etc.) on his electronic book.

FIG. 7 shows a computer, PC or a TV set with an interface to the Internet. All data, information and offers world-wide

US 6,335,678 B1

5

according to FIGS. 4 to 6 can be transmitted to the electronic book. The accounting for the relevant information takes place by way of credit cards or PIN codes.

FIG. 8 shows diagrammatically a lecturer and his students. The students receive the script (E-script for students) for the lecture, transmitted to the electronic books. Thus the student has more time in order to follow the lecturer's exact comments.

FIG. 9 shows an electronic shopping catalogue (E-shopping) which can be transmitted to the electronic books, targeted on the requirements and shopping habits of the user.

FIG. 10 shows an electronic device 8 according to the invention in elevation, as a user may carry it with him. The latter appropriately has outside dimensions of between 12×18 cm and 24×32 cm. It consists of a frame or housing 9, a display 10, an antenna 4, a station 15 for receiving or sending via a radio network and an operating surface 5, 6, 7 constructed as a touch screen. The radio transmission takes place for example via Natel-C, Natel-D, via GSM (Global System for Mobile Communications), GRPS (General Packet Radio Services), EDGE (Enhanced Data rates for GSM Evolution), UMTS (Universal Mobile Telecommunication System), Blue-tooth and/or satellites etc.. The station 15 can also be constructed so that it can exchange signals via a telephone-radio network and furthermore via a local radio network, such as for example the Blue-tooth. With the latter, thus at any location, a connection to the Internet can be made and for example at a university, local data can be memorized. In addition to the on/off switch 1 provided in the housing, an additional control switch 5 may be located, in order to leaf forwards or backwards through the memorized book or magazine or to display a certain or predetermined page. In addition, an indicator 6 of the storage contents or composition of the library stored and a control button 7 for printing a certain page or a plurality of pages is provided.

In order that conference conversations may be possible, in addition an indicated loudspeaker 2 and a video camera 3 are integrated in the frame-like housing 9. The operating surface may consist of a touch-screen LCD, on which the various functions are displayed as graphic objects. In order to start the functions, it is solely necessary to tap the corresponding symbol with the finger. Each user may design his own user surface, which is ergonomic for him. Both the symbols as well as the arrangement may be freely selected. With the control buttons, the user may introduce supplements and notes at individual passages. A passage is marked with the finger and notes of any length can be introduced with a virtual keyboard. These notes are then linked to the passage marked and stored as a hyperlink. The electronic book may communicate and exchange data by way of integrated interfaces with peripherals such as a PC, laptop, printer, scanner, headphones, mouse etc.

According to FIG. 11, the device 8 having a flat construction illustrated in side view, has a height of approximately 1 to 3 cm. This produces the desired light-weight construction, due to which the device 8 is easily portable and nevertheless provides a large display surface.

FIG. 12 shows the electronic device in a block diagram. A microprocessor unit 22 with a control 23 (CPU) as the central components are present in this device 8. Also contained therein are a solid memory 24, a power source 25 and one or more interfaces 26 for the data exchange with a peripheral device 27. This electronic data exchange serves in particular for receiving and storing data received from this peripheral device 27. The input means for controlling the

6

device 8 are provided as touch-screens 5, 6, 7 in the display 10. The station 15 is responsible for receiving and sending signals by way of a radio network, by which electronic data, such as for example E-mails, faxes, data from the Internet or the like can be exchanged by way of the radio network and can be visualized on the display 10. Due to the peripheral device 27 or due to the radio network, electronic data can be loaded, for example electronic books, magazines, stock exchange rates, learning software, programs etc. The data buses and communication paths are indicated by the arrows illustrated.

In addition, a telephone device with a loudspeaker 2 and a microphone 29 with an associated processor 30 or an interface for the connection to headphones are integrated, which allows telephoning by way of the radio network. A video camera 3 and an evaluation unit 31 are furthermore integrated, which facilitate a visualization of the user for video conferencing conversations or the like.

The receiving or sending station 15 is equipped with a SIM chip card 36 and it is designed as a multiband 37, which facilitates a data exchange from several local and supraregional areas of radio networks or by way of a satellite connection 38.

The power source 25 is advantageously formed by a storage battery, which can be charged by a solar cell 34 and by the current supply line via a connectable battery charger 35.

The invention is adequately explained with the above details. The device could also be equipped with additional options, such as for example with an electronic speaker with recognition of passages or with further input means, which operate by way of a speech control, acoustic signals, optical signals, brain currents, proximity switches or switches which can be activated mechanically.

What is claimed is:

1. An electronic device comprising:
   a housing, a display, an input device, a microprocessor, a control arrangement device, a memory, a power source, at least one interface operable to allow data exchange with at least one peripheral device, the data exchange being a receiving and storing of data received from the at least one peripheral device, wherein:
   said display has dimensions such that one page of a book can be displayed at a normal size;
   said housing is a unitary flat and frame shape and is provided with said display integrated therein; and
   said input device is operable to control said electronic device and said input device is provided as a touch-screen in said display; and
   a station operable to receive and send signals by way of a radio network, said station being provided in said housing, wherein provided in said station is at least one receiving module operable to receive a GSM chip or an SIM chip, and at least one receiving module for the radio network, wherein:
   said station is operable to exchange signals byway of at least one of a Natel-C telephone radio network, Natel-D telephone radio network, GSM, GPRS, EDGE system, UMTS, Bluetooth, telephone cable radio network, local radio network, and satellite network, by which electronic data can be exchanged and visualized on said display.

2. An electronic device as claimed in claim 1, wherein integrated in said housing is a telephone device with a loudspeaker and a microphone or an interface for a connection to headphones operable to facilitate telephoning by way of the radio network.

US 6,335,678 B1

7

3. An electronic device as claimed in claim 1, wherein integrated in said housing is a video camera and an evaluation unit operable for transmission of picture signals by said station to facilitate visualization of the user for video conferencing.

4. An electronic device as claimed in claim 1, wherein said housing has external dimensions of between 12x18 cm and 24x32 cm and a height of approximately 1 to 3 cm.

5. An electronic device as claimed in claim 1, wherein said housing is made synthetic material and only one on/off switch is provided.

6. An electronic device as claimed in claim 1, wherein said memory is only one solid memory integrated in said housing.

7. An electronic device as claimed in claim 1, further comprising an electronic speaker with recognition of text passages.

8. An electronic device as claimed in claim 1, wherein said power source is formed by a storage battery which can

8

be charged by a solar cell and/or by main current via a connectable battery charger.

9. An electronic device as claimed in claim 1, wherein said station is designed as a multiband which facilitates a data exchange from several local and supraregional areas of radio networks.

10. An electronic device as claimed in claim 1, further comprising additional input devices which operate by way of at least one of speech control, acoustic signals, optical signals, brain currents, proximity switches, and switches which can be activated mechanically.

11. An electronic device as claimed in claim 1, wherein electronic data can be loaded by the peripheral device or by the radio network.

12. An electronic device as claimed in claim 1, wherein said electronic device is an electronic book.

13. An electronic device as claimed in claim 1, wherein said display is an LCD display.

*  *  *  *  *

# EXHIBIT B

US006335678C1

## (12) EX PARTE REEXAMINATION CERTIFICATE (8213th)

# United States Patent
## Heutschi

(10) **Number:** US 6,335,678 C1

(45) **Certificate Issued:** May 10, 2011

---

(54) **ELECTRONIC DEVICE, PREFERABLY AN ELECTRONIC BOOK**

(75) Inventor: **Theodor Heutschi, Lohn (CH)**

(73) Assignee: **Monec Holding AG, Lohn (CH)**

**Reexamination Request:**
No. 90/010,738, Nov. 12, 2009

**Reexamination Certificate for:**
| | |
|---|---|
| Patent No.: | 6,335,678 |
| Issued: | Jan. 1, 2002 |
| Appl. No.: | 09/403,500 |
| Filed: | Oct. 22, 1999 |

(22) PCT Filed: **Feb. 20, 1999**

(86) PCT No.: **PCT/CH99/00084**

§ 371 (c)(1),
(2), (4) Date: **Oct. 22, 1999**

(87) PCT Pub. No.: **WO99/44144**

PCT Pub. Date: **Sep. 2, 1999**

(51) Int. Cl.
*G06F 15/02* (2006.01)

(52) U.S. Cl. .............................. **340/286.02**; 340/286.01; 345/901; 455/11.1; 455/556.1

(58) Field of Classification Search .......................... None
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | |
|---|---|---|
| 5,628,055 A | 5/1997 | Stein |
| 5,663,748 A | 9/1997 | Huffman et al. |
| 5,701,515 A | 12/1997 | Gradeler |
| 5,708,853 A | 1/1998 | Sanemitsu |
| 5,761,485 A | 6/1998 | Munyan |
| 5,812,930 A | 9/1998 | Zavrel |
| 5,983,073 A | 11/1999 | Ditzik |

OTHER PUBLICATIONS

European Telecommunication Standard ETS 300 509, "European digital cellular telecommunications system (Phase 2): Subscriber Identity Modules (SIM) Functional Characteristics (GSM 02.17," Sep. 1994.*

Ringel, Edward. "Newton? Get Serious!" MacTech, vol. 13, No. 4, Apr. 1997.*

Apple Computer Inc., Oct. 1996, "MessagePad 2000 with Newton 2.1 Operating System", Specification Sheet, Apple Computer Inc., 2 pages.

Dec. 8, 1997, "Ericsson Introduces World's First GSM Triple Band–Capable System", Business Wire, 1 page.

Gore, A., Jan. 1, 1997, "The 162–MHz Newton: The MessagePad 2000 Blows the Doors Off Its Predecessors", MacUser, vol. V13, No. N1, Issn: 0884–0997, 2 pages.

* cited by examiner

*Primary Examiner—Christina Y Leung*

(57) **ABSTRACT**

An electronic device is provided with a housing, a display, input means, a microprocessor, a control arrangement, a memory, a power source, one or more interfaces for data exchange with a peripheral device. The display preferably provided as an LCD-display has a dimensions such that with it approximately one page of a book can be illustrated at normal size, this display being integrated in a flat, frame-like housing. The input means for controlling the device are provided as a touch-screen in the display. A station for receiving and sending signals by way of a radio network allows the exchange of electronic data, such as for example E-mails, faxes, data from the Internet or the like, which can be visualized on the display. The electronic device according to the invention provides the considerable advantage that it is very light-weight and is easy to carry, can be used very universally and in this case has a relatively large display.



US 6,335,678 C1

**1**

# EX PARTE
# REEXAMINATION CERTIFICATE
# ISSUED UNDER 35 U.S.C. 307

### THE PATENT IS HEREBY AMENDED AS INDICATED BELOW.

Matter enclosed in heavy brackets [ ] appeared in the patent, but has been deleted and is no longer a part of the patent; matter printed in italics indicates additions made to the patent.

AS A RESULT OF REEXAMINATION, IT HAS BEEN DETERMINED THAT:

Claim 1 is determined to be patentable as amended.

Claims 2-13, dependent on an amended claim, are determined to be patentable.

New claims 14-28 are added and determined to be patentable.

1. An electronic device comprising:

a housing, a display, an input device, a microprocessor, a control arrangement device *for user designation of graphic object arrangement of said display*, a memory, *a video camera*, a power source, at least one interface operable to allow data exchange with at least one peripheral device, the data exchange being a receiving and storing of data received from the at least one peripheral device, wherein:

said display has dimensions such that one page of a book can be displayed at a normal size;

said housing is unitary flat and frame shape and is provided with said display *and said video camera* integrated therein; and

said input device is operable to control said electronic device and said input device is provided as a touch-screen in said display; and

a *multiband* station operable to receive and send signals by way of a radio network, said *multiband* station being provided in said housing, wherein provided in said *multiband* station is at least one receiving module operable to receive a GSM chip or a [n] SIM chip, *said GSM chip or said SIM chip containing data comprising a PIN code*, and at least one receiving module for the radio network, wherein:

said *multiband* station is operable to exchange signals byway of at least one of a Natel-C telephone radio network, Natel-D telephone radio network, GSM, GPRS, EDGE system, UMTS, Bluetooth,

**2**

telephone cable radio network, local radio network, and satellite network, by which electronic data can be exchanged and visualized on said display, *and permits INTERNET access; and*

*said video camera is connected to said multiband station, having said GSM chip or said SIM chip, via a hardwired data bus.*

*14. An electronic device as claimed in claim 1, wherein financial accounting is controlled by said PIN code.*

*15. An electronic device as claimed in claim 1, wherein said device is configured to receive lecture script from a lecture board.*

*16. An electronic device as claimed in claim 1 wherein said device includes at least one proximity switch.*

*17. An electronic device as claimed in claim 1 wherein the device can only be read with the GSM chip or SIM card associated with the device at the time of downloading the book data.*

*18. An electronic device as claimed in claim 1 further comprising a credit card reader integrated therein.*

*19. An electronic device as claimed in claim 1 further including a speech synthesizer.*

*20. An electric device as claimed in claim 1, wherein said station is a operable to exchange signals by both a telephone-radio network and a local radio network.*

*21. An electronic device as claimed in claim 1 wherein said device includes an indicator of the storage contents of the device.*

*22. An electronic device as claimed in claim 1 wherein said device provides for printing a page or plurality of pages stored thereon.*

*23. An electronic device as claimed in claim 1, further configured to receive e-mails and/or facsimiles.*

*24. An electronic device as claimed in claim 1, further comprising a loudspeaker.*

*25. An electronic device as claimed in claim 1, wherein said station is multi-band allowing data exchange from several local and supra-regional areas of radio networks or by way of a satellite connection.*

*26. An electronic device as claimed in claim 1, further including telephony capabilities.*

*27. An electronic device as claimed in claim 1, wherein said input device is further operatively configured to link notes inputted through said input device to a passage of said book.*

*28. An electronic device as claimed in claim 3, wherein said microprocessor, said video camera and said evaluation units are operatively configured to allow video conferencing concurrently with down loading of data.*

\* \* \* \* \*

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Monec Holdings AG

## DEFENDANTS
Motorola Mobility, Inc., Samsung Electronics America, Inc., Samsung Electronics, Inc., HTC Corp., HTC America, Inc., Exedea, Inc.

**(b)** County of Residence of First Listed Plaintiff    Berne, Switzerland
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant    Lake County, Illinois
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Dominick T. Gattuso, Proctor Heyman LLP, 300 Delaware Ave., Suite 200, Wilmington, DE 19801, (302) 472-7300

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)    and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

### CONTRACT
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders' Suits
☐ 190 Other Contract
☐ 195 Contract Product Liability
☐ 196 Franchise

### REAL PROPERTY
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

### TORTS
**PERSONAL INJURY**
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury

**PERSONAL INJURY**
☐ 362 Personal Injury - Med. Malpractice
☐ 365 Personal Injury - Product Liability
☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

### CIVIL RIGHTS
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/ Accommodations
☐ 444 Welfare
☐ 445 Amer. w/Disabilities - Employment
☐ 446 Amer. w/Disabilities - Other
☐ 440 Other Civil Rights

### PRISONER PETITIONS
☐ 510 Motions to Vacate Sentence
**Habeas Corpus:**
☐ 530 General
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

### FORFEITURE/PENALTY
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 R.R. & Truck
☐ 650 Airline Regs.
☐ 660 Occupational Safety/Health
☐ 690 Other

### LABOR
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Mgmt. Relations
☐ 730 Labor/Mgmt. Reporting & Disclosure Act
☐ 740 Railway Labor Act
☐ 790 Other Labor Litigation
☐ 791 Empl. Ret. Inc. Security Act

### IMMIGRATION
☐ 462 Naturalization Application
☐ 463 Habeas Corpus - Alien Detainee
☐ 465 Other Immigration Actions

### BANKRUPTCY
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS
☐ 820 Copyrights
☒ 830 Patent
☐ 840 Trademark

### SOCIAL SECURITY
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

### FEDERAL TAX SUITS
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS—Third Party 26 USC 7609

### OTHER STATUTES
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Sat TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 890 Other Statutory Actions
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 895 Freedom of Information Act
☐ 900 Appeal of Fee Determination Under Equal Access to Justice
☐ 950 Constitutionality of State Statutes

## V. ORIGIN (Place an "X" in One Box Only)
☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
35 U.S.C. § 271 et seq.
Brief description of cause:
Patent Infringement

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):    JUDGE       DOCKET NUMBER

DATE
09/09/2011

SIGNATURE OF ATTORNEY OF RECORD
Dominick Gattuso

## FOR OFFICE USE ONLY

RECEIPT #     AMOUNT     APPLYING IFP     JUDGE     MAG. JUDGE

JS 44 Reverse (Rev. 12/07)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.** **(a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.** **Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553
Brief Description: Unauthorized reception of cable service

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.