IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MONEC HOLDING AG,<br><br>Plaintiffs,<br><br>v.<br><br>MOTOROLA MOBILITY, INC.,<br>SAMSUNG ELECTRONICS AMERICA,<br>INC., SAMSUNG ELECTRONICS, INC.,<br>HTC CORP., HTC AMERICA, INC. and<br>EXEDA, INC.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)  Civil Action No. 11-798-LPS-SRF<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## REPORT AND RECOMMENDATION

### I. INTRODUCTION

Presently before the court in this patent infringement action is a motion to dismiss the first amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), filed by three sets of defendants: (1) Motorola Mobility, Inc.; (2) Samsung Electronics America, Inc. and Samsung Electronics Co., Ltd.; and (3) HTC Corporation, HTC America, Inc., and Exeda, Inc. (collectively, "Defendants") on January 13, 2012. (D.I. 41) For the reasons which follow, I recommend that the court grant the motion to dismiss the claims of indirect infringement and willfulness without prejudice.

### II. BACKGROUND

On January 1, 2002, United States Patent No. 6,335,678 ("the '678 patent"), entitled "Electronic Device, Preferably an Electronic Book," issued to Theodor Heutschi. (D.I. 34 at ¶ 14) On November 12, 2009, a request for ex parte reexamination of the '678 patent was filed,

and the United States Patent and Trademark Office (the "PTO") issued an ex parte reexamination certificate to Plaintiff MONEC Holding AG ("MONEC" or "Plaintiff") on May 10, 2011. (*Id.* at ¶¶ 15-16) MONEC is the owner by assignment of the entire right, title, and interest in and to the '678 patent, as reexamined. (*Id.* at ¶¶ 14, 18) The reexamined '678 patent embodiments include a flat electronic device housing a processing system to communicate, store, interact with, and display digital media transferred from a peripheral device over a multiband radio network station incorporating a GSM/SIM chip and manipulated by various input means, including a touch screen. (*Id.* at ¶ 17)

MONEC filed its complaint in the instant action on September 9, 2011, asserting infringement of the '678 patent, as reexamined. (D.I. 1) MONEC filed its first amended complaint on December 19, 2011, alleging that each Defendant manufactures, markets, and/or sells smart phones and tablet computers[1] which allegedly infringe the reexamined '678 patent. (D.I. 34 at ¶¶ 22-100) Specifically, MONEC alleges that Defendants instruct their customers, both retailers and end-users, on infringing uses of the Infringing Products, and Defendants knew or should have known that the Infringing Products were especially made for use in an infringement of the reexamined '678 patent and that there is no substantially noninfringing use of the Infringing Products. (*Id.* at ¶¶ 33-35, 58-60, 88-90) According to MONEC, Defendants' competitors Apple and Hewlett-Packard have engaged in litigation with MONEC regarding infringement of the '678 patent (the "Apple Action" and the "HP Action," respectively), and this litigation received substantial press coverage which likely would have been followed and

---

[1]These products include the Motorola 4G Atrix smart phone, the Motorola Xoom tablet, Samsung's Infuse 4G smart phone and Galaxy Tab, and HTC's ThunderBolt smart phone and Jetstream tablet (collectively, the "Infringing Products").

monitored by Defendants, who are also involved in litigation against Apple. (*Id.* at ¶¶ 37-40, 62-66, 92-95)

## III. LEGAL STANDARD

To state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required, the complaint must set forth sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A claim is facially plausible when the factual allegations allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 555-56; *Iqbal*, 556 U.S. at 663. The court "need not accept as true threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Id.*

Following the Supreme Court's decision in *Iqbal*, district courts have conducted a two-part analysis in determining the sufficiency of the claims. First, the court must separate the factual and legal elements of the claim, accepting the complaint's well-pleaded facts as true and disregarding the legal conclusions. *Iqbal*, 556 U.S. at 663. Second, the court must determine whether the facts alleged in the complaint state a plausible claim by conducting a context-specific inquiry that "draw[s] on [the court's] experience and common sense." *Id.* at 663-64; *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to

relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## IV. DISCUSSION

### A. Indirect Infringement

#### 1. Legal standards

##### (a) Knowledge

To prevail on a claim for indirect infringement, a defendant must first demonstrate direct infringement, and then establish that the "defendant possessed the requisite knowledge or intent to be held vicariously liable." *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1272-73 (Fed. Cir. 2004). The knowledge requirement must be met by a showing of either actual knowledge or willful blindness. *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2068 (2011). At the pleading stage, "the question before the Court on defendants' motions to dismiss is whether [the plaintiff] has plead sufficient facts . . . for the Court to *infer* that the defendants had knowledge of [the plaintiff's] patents and that their products infringed on those patents." *Trading Techs. Int'l, Inc. v. BCG Partners, Inc.*, 2011 WL 3946581, at *3 (N.D. Ill. Sept. 2, 2011) (emphasis in original) (citing *Global-Tech*, 131 S. Ct. at 2068).

This court has held that a complaint sufficiently pleads a defendant's actual knowledge when a plaintiff alleges that the defendant or its predecessor learned of a patent-in-suit from an exchange of proprietary information pursuant to a licensing agreement,[2] or when a plaintiff

---

[2] *See Xpoint Techs. v. Microsoft Corp.*, 730 F. Supp. 2d 349, 357 (D. Del. 2010); *Netgear, Inc. v. Ruckus Wireless, Inc.*, 2012 WL 1118773, at *4 (D. Del. Mar. 28, 2012) ("Ruckus has had knowledge of the '035 patent long before the filing of this lawsuit because Ruckus previously licensed the '035 patent from IBM Corporation.").

alleges that a defendant previously filed papers with the PTO identifying the patents as prior art.[3] In contrast, a plaintiff fails to sufficiently plead knowledge of the patent-in-suit when the plaintiff merely recites the elements for indirect infringement without supporting facts,[4] or when the factual allegations merely support the conclusion that the parties have patents in the same field.[5]

The Supreme Court recently held that a plaintiff may plead knowledge for purposes of a claim for induced infringement by applying the theory of willful blindness, rejecting the "deliberate indifference" standard previously applied by the Federal Circuit. *See Global-Tech*, 131 S. Ct. at 2071. The Supreme Court identified a willfully blind defendant as "one who takes deliberate actions to avoid confirming a high probability of wrongdoing and who can almost be said to have actually known the critical facts." *Id.* at 2070-71. To state a claim for willful blindness, a plaintiff must plead facts demonstrating that the defendant "(1) subjectively believed there was a high probability a particular fact existed or was true, and (2) took deliberate actions to avoid learning of that fact." *Vasudevan Software, Inc. v. TIBCO Software Inc.*, 2012 WL 1831543, at *5 (N.D. Cal. May 18, 2012) (citing *Global-Tech*, 131 S. Ct. at 2070). A complaint that fails to identify any affirmative actions taken by the defendant to avoid gaining actual knowledge of the patent-in-suit is insufficient to state a claim for relief based on the willful

---

[3]*See Mallinckrodt Inc. v. E-Z-Em, Inc.*, 671 F. Supp. 2d 563, 569 (D. Del. 2009); *see also* D.I. 46, Ex. A.

[4]*See Minkus Elec. Display Sys. Inc. v. Adaptive Micro Sys. LLC*, 2011 WL 941197, at *3 (D. Del. Mar. 16, 2011); *Xpoint Techs.*, 730 F. Supp. 2d at 357; *Mallinckrodt, Inc. v. E-Z-Em Inc.*, 670 F. Supp. 2d 349, 354 (D. Del. 2009); *IpVenture Inc. v. Lenovo Group Ltd.*, 2012 WL 2564893, at *2 (D. Del. June 29, 2012); *HSM Portfolio LLC v. Fujitsu Ltd.*, 2012 WL 2580547, at *1 (D. Del. July 3, 2012).

[5]*See Eon Corp. IP Holdings LLC v. FLO TV Inc.*, 802 F. Supp. 2d 527, 533 (D. Del. 2011); *IPLearn LLC v. K12 Inc.*, C.A. No. 11-1026-RGA, D.I. 20 at 2-3 (D. Del. July 2, 2012).

blindness theory under the pleading standards set forth in Rule 8, *Twombly*, and *Iqbal*. *Id.* at *6; *see also Mikkelsen Graphic Eng'g Inc. v. Zund Am., Inc.*, 2011 WL 6122377, at *7 n.3 (E.D. Wis. Dec. 8, 2011) (concluding on summary judgment that willful blindness did not apply because there was no evidence that the defendant deliberately shielded itself from clear evidence that the acts it induced constituted patent infringement).

### (b) Induced infringement

Pursuant to 35 U.S.C. § 271(b), "[w]hoever actively induces infringement of a patent shall be liable as an infringer." "To prove induced infringement, the patentee must show direct infringement, and that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1363 (Fed. Cir. 2012) (internal quotations omitted). As such, a claim for inducement must allege the requisite knowledge and intent. *Mallinckrodt*, 670 F. Supp. 2d at 354. "The requirement that the alleged infringer knew or should have known his actions would induce actual infringement necessarily includes the requirement that he or she knew of the patent." *DSU Med. Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1304 (Fed. Cir. 2006) (en banc). However, knowledge of infringement is not enough. *Metro-Goldwyn-Mayer Studios v. Grokster, Ltd.*, 545 U.S. 913, 915 (2005). "Inducement requires evidence of culpable conduct, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities." *DSU Med. Corp.*, 471 F.3d at 1306.

### (c) Contributory infringement

"Contributory infringement imposes liability on one who embodies in a non-staple device the heart of a patented process and supplies the device to others to complete the process and

appropriate the benefit of the patented invention." *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1327 (Fed. Cir. 2009). To state a claim for contributory infringement, an infringer must sell, offer to sell or import into the United States a component of an infringing product "knowing [the component] to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use." 35 U.S.C. § 271(c); *see Lucent Techs. v. Gateway, Inc.*, 580 F.3d 1301, 1320 (Fed. Cir. 2009). As with induced infringement, a claim for contributory infringement must also contain allegations of the requisite knowledge of the patent-in-suit at the time of infringement. *Mallinckrodt*, 670 F. Supp. 2d at 355; *see also Global-Tech*, 131 S. Ct. at 2068. In addition, the patentee bears the burden of proving that the accused products have no substantial non-infringing uses. *See Golden Blount, Inc. v. Robert H. Peterson Co.*, 438 F.3d 1354, 1363 (Fed. Cir. 2006).

    **2.** **Parties' contentions**

In support of their motion to dismiss, Defendants contend that the first amended complaint does not allege sufficient facts to support a plausible claim that each defendant actually knew of the reexamined '678 patent before the action was filed. (D.I. 42 at 11, 16) Defendants allege that MONEC's assumption of Defendants' knowledge based on the litigation activities of certain competitors prior to the reexamination is insufficient because mere notice of a patent, or possible infringement of that patent, does not establish that Defendants knowingly induced or specifically intended to induce infringement. (*Id.* at 12)

In response, MONEC alleges that Defendants improperly merge the burden of pleading indirect infringement with the burden of proving it, and MONEC must only show sufficient factual allegations for the court to infer that Defendants either had actual knowledge of the

7

patent-in-suit or remained willfully blind. (D.I. 45 at 5, 7) MONEC contends that the first amended complaint alleges that Defendants actively monitor the litigation activities of their competitors, which would have led Defendants to learn of the '678 patent in this case. (*Id.* at 7) Moreover, MONEC contends that knowledge of the original '678 patent claims would invariably cause Defendants to inquire as to the reexamination of the '678 patent. (*Id.* at 8) MONEC distinguishes the court's decision in *Eon Corp. IP Holdings LLC v. FLO TV Inc.*, by noting that the competitor in the present matter has been involved in highly publicized litigation concerning the same allegedly infringing product and only one patent. (*Id.* at 9)

Defendants reply that the cases cited by MONEC do not reflect the revised pleading standard following the Supreme Court's decisions in *Twombly* and *Iqbal*. (D.I. 46 at 1-2) Defendants further allege that indirect infringement requires actual, not constructive knowledge of the exact patent-in-suit, and MONEC has failed to plead knowledge of the reexamined '678 patent. (*Id.* at 3) Defendants contend that they would have no reason to inquire about a subsequent reexamination of the '678 patent based on the Apple Action, in which Apple's motion for summary judgment of non-infringement was granted. (*Id.* at 5-6) Defendants argue that requiring market participants to monitor each competitor's litigation, and to review and monitor reexamination proceedings of patents involved in competitors' litigations, is at odds with Federal Circuit precedent. (*Id.* at 6)

### 3. Analysis

#### (a) Actual knowledge

MONEC fails to allege sufficient facts that would allow the court to infer that Defendants

8

had actual knowledge[6] of the reexamined '678 patent at the time they committed the allegedly infringing activities. As a preliminary matter, MONEC pleads no facts indicating that Defendants followed the reexamination proceedings of the '678 patent, and instead assumes that Defendants would have known about the reexamined '678 patent based on the litigation activities of their competitors regarding the original '678 patent. MONEC cites no authority indicating that actual knowledge of an original patent is equivalent to actual knowledge of a reexamined patent, and the relevant case law suggests that drawing such an inference is too tenuous even at the pleading stage. *See Eon*, 802 F. Supp. 2d at 533-34 (finding that allegations of actual knowledge were too tenuous to state a claim even where the defendant acquired rights to a patent which expressly listed the patent-in-suit as prior art); *see also Trading Techs.*, 2011 WL 3946581, at *4 n.5 (holding that "pleading that the competitor would be monitoring the plaintiff's patent filings and any patents issued to it" is insufficient to establish knowledge, and the litigants' competition in the same industry is "not sufficiently plausible by itself to pass muster under *Iqbal*.").

This court has not been convinced of the sufficiency of pleadings charging knowledge that is based upon a defendant's participation in the same market, media publicity and unrelated litigation by the defendant's competitors concerning the relevant patent. Consequently, MONEC's argument fails for reasons similar to those set forth in this court's decisions in *Eon*, *Chalumeau Power Sys. LLC v. Alcatel-Lucent et al.*, and *SoftView LLC v. Apple Inc. See Eon*,

---

[6]The first amended complaint alleges that each Defendant had both actual and constructive knowledge of the patent-in-suit. (D.I. 34 at ¶¶ 36, 61, 91) However, actual (not constructive) knowledge of the patent-in-suit is necessary to state a claim for indirect infringement under the Supreme Court's decision in *Global-Tech*, unless the patentee is claiming willful blindness. *See Global-Tech*, 131 S. Ct. at 2068.

802 F. Supp. 2d at 533; *SoftView LLC v. Apple Inc.*, C.A. No. 10-389-LPS, 2012 WL 3061027 (D. Del. July 26, 2012); *Chalumeau Power Sys. LLC v. Alcatel-Lucent et al.*, C.A. No. 11-1175-RGA (D. Del. July 18, 2012) (D.I. 57, Ex. A). In *Eon*, the court rejected the plaintiff's allegation that the defendants knew about the patent-in-suit by virtue of their participation in the same market, describing the argument as particularly weak "given the rapidly changing nature of technologically-based markets such as interactive television." *Eon*, 802 F. Supp. 2d at 533. In *Chalumeau*, this court declined to accept a plaintiff's argument that an alleged infringer's actual knowledge of a competitor's suit concerning the same patent would be sufficient to withstand dismissal at the pleading stage, describing the theory as "fanciful." (D.I. 57, Ex. A) Most recently, in *SoftView*, the court found that heightened media attention to relevant patent lawsuits does not "plausibly suggest that [the defendant] would have been aware of those particular media reports, particularly given the sheer number and frequency of patent lawsuits asserted against smartphone manufacturers." *SoftView*, 2012 WL 3061027, at *6.

Thus, MONEC's reliance on Defendants' participation as "reasonable economic actor[s] and competitor[s]" in the same technologically-based industry is insufficient to establish actual knowledge of the reexamined '678 patent. Although MONEC attempts to bolster its assertion by alleging that Defendants should be aware that MONEC has previously been involved in patent litigation with Apple,[7] this court has clearly established that there is no presumption of actual knowledge from such other patent suits that is sufficient to withstand dismissal at the pleading stage. MONEC argues that Defendants would "likely" monitor the activities of their competitors, including litigation involving HP and Apple. (D.I. 45 at 7) However, Defendants

---

[7]*See* D.I. 34 at ¶¶ 37, 62, 92.

have produced a listing of more than two hundred patent cases involving Apple. (D.I. 43, Ex. E) MONEC fails to explain how Defendants "would have obtained" selective knowledge of a specific patent in a specific case, without wading through the pool of more than two hundred cases involving different patents. (D.I. 45 at 10) Consequently, it is not a plausible argument to charge Defendants with knowledge of the '678 patent from among hundreds of cases involving their competitors' products.

Assuming that MONEC has sufficiently pled Defendants' actual knowledge of the original '678 patent, MONEC asks the court to equate such knowledge with actual knowledge of the reexamined '678 patent, without adequately pleading their connection. (D.I. 45 at 8) According to MONEC, notice of the '678 patent litigation should have motivated each Defendant to continue tracking its further activity through reexamination. (*Id.*) MONEC cites no authority for imposing a duty on Defendants to indefinitely track a particular patent in anticipation of a potential infringement lawsuit. Here, Apple successfully defended non-infringement of the original '678 patent, a ruling later vacated due to a settlement agreement. (D.I. 43, Ex. B) However, the Apple Action concluded more than a year before the reexamined '678 patent issued on May 10, 2011. (D.I. 43, Ex. D.; D.I. 1, Ex. B) Such speculation falls short of a plausible argument for equating knowledge of the '678 patent with actual knowledge of the patent-in-suit, the reexamined '678 patent.

MONEC's reliance upon *Investpic, LLC v. FactSet Research Systems, Inc.* for its contention that knowledge of the patent should be readily apparent from public disclosure is inapposite to the facts of this case. In *Investpic*, the court found that public disclosure supported an inference of an individual defendant's knowledge because the patent-in-suit had been cited by

11

at least seventy-nine issued patents in the past ten years. *See Investpic, LLC v. FactSet Research Sys., Inc.*, 2011 WL 4591078, at *1-2 (D. Del. Sept. 30, 2011). The first amended complaint in the present matter contains no similar allegations supporting an inference that the reexamined '678 patent is widely known and frequently referenced in the industry. Instead, the alleged public disclosure stems from two lawsuits against Defendants' competitors, which concluded well before the issuance of the reexamined '678 patent.

### (b) Willful blindness

MONEC's contention that the court should apply the "willful blindness" standard set forth in *Global-Tech* also fails. The allegations in the first amended complaint do not suggest that Defendants purposefully avoided knowledge of the '678 patent. Instead, the allegations plainly indicate that each Defendant, "as a reasonable economic actor and competitor, likely monitors the activities of its primary competitors, such as Apple, including patent litigation in which those competitors are involved, and as a result [Defendants] would have obtained knowledge of the '678 patent, as reexamined." (D.I. 34 at ¶¶ 40, 66, 95) These contentions suggest that Defendants actively sought out knowledge of their competitors' patent litigation activities. *See Vasudevan*, 2012 WL 1831543, at *6 (rejecting willful blindness argument where the plaintiff "neglected to identify any affirmative actions taken by [the defendant] to avoid gaining actual knowledge of the [patent-in-suit]."). Although the first amended complaint also contains allegations of "constructive knowledge of the '678 Patent, and the Reexamined '678 Patent,"[8] these allegations are insufficient to establish "active efforts by an inducer" to avoid

---

[8](D.I. 34 at ¶¶ 36, 61, 91)

knowledge of the patent-in-suit. *Global-Tech*, 131 S. Ct. at 2071.[9]

### (c)  Intent

Even if MONEC were able to satisfy the "actual knowledge" requirement to state a claim for indirect infringement, the first amended complaint does not satisfy the "intent" prong. To appropriately plead indirect infringement, MONEC must allege knowledge of the allegedly infringing nature of the asserted conduct, both under § 271(b) ("knowledge that the induced acts constitute patent infringement") and § 271(c) ("knowledge that the combination for which [its] component was especially designed [is] both patented and infringing"). *Apeldyn Corp. v. Sony Corp.*, 2012 WL 1129371, at *3 (D. Del. Apr. 4, 2012).

MONEC asserts that each Defendant "induced and will continue to contribute to and/or induce the infringement of the Reexamined '678 Patent by others . . . ." (D.I. 34 at ¶¶ 29, 54, 84) Such indirect infringement is claimed from each Defendant's conduct in selling, advertising, supplying and instructing its respective customers on the use of the infringing product. The conclusory averments contain no factual support to establish the requisite "intent." Allegations of the marketing activities of the Defendants do not, on their own, demonstrate that Defendants knew such activities were infringing or that Defendants possessed the specific intent to encourage another's infringement. *See Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1330 (Fed. Cir. 2010) (induced infringement could be based on fact that defendant received letter accusing its products of infringement and continued to sell products containing allegedly infringing

---

[9]In *Global-Tech*, the defendant took deliberate steps to disregard a patent by copying and selling as its own invention, a version of a patented product that lacked U.S. patent markings. Every feature of the product was copied, except for its cosmetics. Moreover, the defendant made a deliberate effort to omit disclosure of the patent to its attorney preparing a patent opinion. No similarly contrived conduct has been alleged to invoke the standard in the pending matter.

13

component); *Tarkus Imaging, Inc. v. Adobe Sys., Inc.*, 2012 WL 2175788, at *4 (D. Del. June 14, 2012) (actual knowledge of patent-in-suit in combination with evidence that defendant advertised use of accused features and provided users with instructions on infringing uses was sufficient to preclude summary judgment regarding intent to induce infringement). MONEC pleads the requirements for indirect infringement without reference to any facts which demonstrate how the requirements are satisfied in this instance. *See Pieczenik v. Abbott Labs.*, 2011 WL 1045347, at *7 (D.N.J. Mar. 23, 2011) (finding insufficient facts to support claim for inducement where plaintiff alleged that defendant sold the purportedly infringing items, but alleged no facts from which to infer knowledge or intent). To the extent intent is to be inferred from the same source as actual knowledge, i.e., competition and litigation in the same smart phone market, it is not sufficiently pleaded.

At oral argument, MONEC cited this court's decision in *Apeldyn Corp. v. Sony Corp.*, in which the court stated that there is no impediment to limiting indirect infringement to post-litigation conduct. *See Apeldyn Corp. v. Sony Corp.*, — F. Supp. 2d —, 2012 WL 1129371, at *4 (D. Del. Apr. 4, 2012); *see also Walker Digital, LLC v. Facebook, Inc.*, — F. Supp. 2d —, 2012 WL 1129370, at *5 (D. Del. Apr. 4, 2012).[10] In *Apeldyn* and *Walker Digital*, the court concluded that a plaintiff may plead actual knowledge of the patents-in-suit as of the filing of the initial complaint to state a cause of action limited to the defendant's post-litigation conduct, and a defendant's decision to continue its conduct despite knowledge gleaned from the complaint is sufficient to establish the intent element required to state a claim for indirect infringement. *Id.* The court confirmed that pre-suit knowledge of the patent must be alleged unless the plaintiff

---

[10]Both *Apeldyn* and *Walker Digital* were issued after the completion of briefing in this case.

14

limits its cause of action for indirect infringement to post-litigation conduct. *See id. Apeldyn* and *Walker Digital* are inapposite to the facts of this case[11] because the first amended complaint fails to supply any factual allegations that would convert the post-suit knowledge into a plausible allegation of knowledge of the infringing use. *See Chalameau*, C.A. No. 11-1175-RGA, at 2-3 (D. Del. July 18, 2012) (D.I. 57, Ex. A).

### B. Willful Infringement

#### 1. Legal standard

To prove a cause of action for willful infringement, a patent owner must demonstrate by clear and convincing evidence that the infringer acted despite an "objectively high likelihood that its actions constituted infringement" and that this "objectively-defined risk was . . . either known or so obvious that it should have been known to the accused infringer." *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007). If the first prong cannot be shown, then the court should not put the issue of willfulness – including the second "subjective" prong – before a jury. *See Powell v. Home Depot U.S.A., Inc.*, 663 F.3d 1221, 1236 (Fed. Cir. 2011) ("Should the court determine that the infringer's reliance on a defense was not objectively reckless, it cannot send the question of willfulness to the jury, since proving the objective prong is a predicate to consideration of the subjective prong."). "Drawing inferences, especially for 'an intent-implicating question such as willfulness, is particularly within the province of the fact finder that observed the witnesses.'" *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc.*, 670 F.3d

---

[11]The court also acknowledged that its holdings in *Apeldyn* and *Walker Digital* were inconsistent with its prior decisions in *Xpoint Techs. v. Microsoft Corp.*, 730 F. Supp. 2d 349 (D. Del. 2010) and *Eon*, 802 F. Supp. 2d 527. *See Apeldyn*, 2012 WL 1129371, at *4 n.8; *Walker Digital*, 2012 WL 1129370, at *6 n.11.

1171, 1189-90 (Fed. Cir. 2012) (quoting *Rolls-Royce, Ltd. v. GTE Valeron Corp.*, 800 F.2d 1101, 1110 (Fed. Cir. 1986)).

At the pleading stage, a plaintiff alleging a cause of action for willful infringement must "plead facts giving rise to at least a showing of objective recklessness of the infringement risk." *St. Clair Intellectual Prop. Consultants, Inc. v. Hewlett-Packard Co.*, 2012 WL 1134318, at *2-3 (D. Del. Mar. 28, 2012) (internal quotations omitted). "Actual knowledge of infringement or the infringement risk is not necessary to plead a claim for willful infringement," but the complaint must adequately allege "factual circumstances in which the patents-in-suit [are] called to the attention" of the defendants." *Id.* The complaint must "demonstrate[ ] a link between the various allegations of knowledge of the patents-in-suit and the allegations that the risks of infringement" were either known or were so obvious that they should have been known. *Id.* at *3.

### 2. Parties' contentions

In support of their motion to dismiss, Defendants contend that the first amended complaint fails to state a claim for willful infringement because MONEC pleads no facts to support its allegation that Defendants "willfully and wantonly infringed the Reexamined '678 Patent in deliberate and intentional disregard of Monec's rights." (D.I. 42 at 19) Instead, Defendants contend that MONEC makes conclusory allegations that Defendants had "full knowledge" of the reexamined '678 patent. (*Id.*) Even if Defendants knew of the reexamined '678 patent, Defendants contend that MONEC makes no factual allegations supporting how or why Defendants would have known that the patent applied to their allegedly infringing activities or that Defendants acted in deliberate disregard of MONEC's rights. (*Id.* at 20)

In response, MONEC contends that the ultimate determination of whether infringement has been willful is a question of fact and is to be determined based on the totality of the circumstances. (D.I. 45 at 14) MONEC contends that the facts in the amended complaint are sufficient for the court to infer that Defendants had actual or constructive knowledge of the infringed patents for purposes of determining whether indirect infringement is sufficiently pled, and no further assertions of knowledge are required to state a claim for willful infringement. (*Id.* at 14-15)

### 3. Analysis

MONEC's failure to sufficiently plead that Defendants had any reason to know of the reexamined '678 patent is also fatal to its claim for willful infringement. *See St. Clair*, 2012 WL 1134318, at *2-3 (finding willfulness claim adequately pled where complaint set forth factual circumstances demonstrating actual knowledge of patents-in-suit in addition to facts giving rise to a showing of objective recklessness of the infringement risk); *see also Walker Digital*, 2012 WL 1129370, at *7-8 (upholding claim for willful infringement where the amended complaint provided evidence that the defendant had pre-suit knowledge of the patents-in-suit due to the defendant's interactions with the plaintiff's representatives); *Netgear, Inc. v. Ruckus Wireless, Inc.*, 2012 WL 1118773, at *5 (D. Del. Mar. 28, 2012) (same). For the reasons previously stated, the first amended complaint does not sufficiently allege Defendants' actual knowledge of the reexamined '678 patent. MONEC's contentions do not plausibly support the conclusion that each Defendant "acted despite an objectively high likelihood that its actions constituted infringement of a valid patent," and that Defendants knew or should have known that their actions constituted infringement of a valid patent. *Chalumeau*, C.A. No. 11-1175-RGA, D.I. 50

at 3 (quoting *In re Seagate Tech., LLC*, 497 F.3d at 1371 (internal quotations omitted)).

## V.  CONCLUSION

For the foregoing reasons, I recommend that the court deny Defendants' motion to dismiss the original complaint as moot (D.I. 30), and grant Defendants' motion to dismiss MONEC's claims in the first amended complaint for induced, contributory, and willful infringement of the reexamined '678 patent, without prejudice (D.I. 41).[12]

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b). The objections and responses to the objections are limited to ten (10) pages each.

The parties are directed to the court's standing Order in Non Pro Se matters for Objections filed under Fed. R. Civ. P. 72, dated November 16, 2009, a copy of which is available on the court's website, www.ded.uscourts.gov.

Dated: August 3rd, 2012

_____
UNITED STATES MAGISTRATE JUDGE

---

[12]MONEC suggested the potential for a cure of any pleading deficiencies by a further amendment of the complaint. As there is no pending motion pursuant to Rule 15, the court declines to consider the request at this stage.