IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MONEC HOLDING AG, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 11-798-LPS-SRF |
| | ) | |
| MOTOROLA MOBILITY, INC., | ) | |
| SAMSUNG ELECTRONICS AMERICA, | ) | |
| INC., SAMSUNG ELECTRONICS, INC., | ) | UNDER SEAL |
| HTC CORP., HTC AMERICA, INC. and | ) | |
| EXEDA, INC., | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM ORDER

I. INTRODUCTION

Presently before the court in this patent infringement action are two motions: (1) plaintiff Monec Holding AG's ("Monec") motion for leave to file a second amended complaint pursuant to Federal Rules of Civil Procedure 15(a) and 16, filed on August 5, 2013 (D.I. 188); and (2) Monec's motion for leave to supplement the *Markman* record, filed on September 10, 2013 (D.I. 212). For the following reasons, the court will deny the motions.

II. BACKGROUND

On January 1, 2002, United States Patent No. 6,335,678 ("the '678 patent"), entitled "Electronic Device, Preferably an Electronic Book," issued to Theodor Heutschi. (D.I. 34 at ¶ 14) On November 12, 2009, a request for ex parte reexamination of the '678 patent was filed, and the United States Patent and Trademark Office (the "PTO") issued an ex parte reexamination certificate to Monec on May 10, 2011. (*Id.* at ¶¶ 15-16) Monec is the owner by assignment of

the entire right, title, and interest in and to the '678 patent, as reexamined. (*Id.* at ¶¶ 14, 18) The reexamined '678 patent embodiments include a flat electronic device housing a processing system to communicate, store, interact with, and display digital media transferred from a peripheral device over a multiband radio network station incorporating a GSM/SIM chip and manipulated by various input means, including a touch screen. (*Id.* at ¶ 17)

Monec filed its complaint in the instant action on September 9, 2011, asserting infringement of the '678 patent, as reexamined, against defendants Samsung Electronics Inc. and Samsung Electronics America, Inc. ("SEA"). (D.I. 1) Monec filed its first amended complaint as a matter of right on December 19, 2011, changing the name of nonexistent defendant Samsung Electronics Inc. to Samsung Electronics Co., Ltd. ("SEC"), the parent company of defendant SEA. (D.I. 34) Monec made this change after SEA notified Monec of the apparent error. (D.I. 188 at 2; D.I. 200 at 1)

On August 2, 2012, this court entered a scheduling order. (D.I. 59) The scheduling order provided that joinder of the parties was to be completed by March 29, 2013 and fact discovery was to be completed by August 1, 2013. (*Id.*) On June 27, 2013, the parties entered into a stipulation to extend the fact discovery deadline to September 10, 2013. (D.I. 173) Monec filed the instant motion to amend on August 5, 2013, seeking to add Samsung Telecommunications America, LLC ("STA") as a defendant in the case. (D.I. 188) On September 9, 2013, the parties entered into a second stipulation to extend the fact discovery deadline to October 14, 2013. (D.I. 209)

III.  DISCUSSION

    A.    Motion to File Second Amended Complaint

        1.    Legal standard

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that after a responsive pleading has been filed, a party may amend its pleading "only with the opposing party's written consent or the court's leave," and "[t]he court should freely give leave when justice so requires." The decision to grant or deny leave to amend lies within the discretion of the court. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). The Third Circuit has adopted a liberal approach to the amendment of pleadings. *See Dole v. Arco*, 921 F.2d 484, 487 (3d Cir. 1990). In the absence of undue delay, bad faith, or dilatory motives on the part of the moving party, the amendment should be freely granted, unless it is futile or unfairly prejudicial to the non-moving party. *See Foman*, 371 U.S. at 182; *In re Burlington*, 114 F.3d at 1434.

An amendment is futile if it is frivolous, fails to state a claim upon which relief can be granted, or "advances a claim or defense that is legally insufficient on its face." *Koken v. GPC Int'l, Inc.*, 443 F. Supp. 2d 631, 634 (D. Del. 2006). Delay alone is an insufficient reason to deny leave to amend, but there are grounds to deny amendment if the delay is coupled with either an unwarranted burden on the court or undue prejudice to the non-moving party as a result of the amendment. *See Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001).

"[P]rejudice to the non-moving party is the touchstone for the denial of the amendment." *Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir. 1989) (internal quotation marks omitted). To establish prejudice, the non-moving party must make a showing that allowing the amended

3

pleading would (1) require the non-moving party to "expend significant additional resources to conduct discovery and prepare for trial," (2) "significantly delay the resolution of the dispute," or (3) "prevent [a party] from bringing a timely action in another jurisdiction." *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004); *see also Cureton*, 252 F.3d at 273 (explaining that a party may suffer undue prejudice if the proposed amendment causes surprise or necessitates additional discovery, additional costs, or additional preparation to defend against new facts or theories alleged). "Thus, while bearing in mind the liberal pleading philosophy of the federal rules," it is also true that "substantial or undue prejudice to the non-moving party is a sufficient ground for denial of leave to amend." *Cureton*, 252 F.3d at 273.

If a party seeks leave to amend after a deadline imposed by the scheduling order, the court must apply Rule 16 of the Federal Rules of Civil Procedure. *WebXchange Inc. v. Dell Inc.*, C.A. No. 08-132-JJF, 2010 WL 256547, at *2 (D. Del. Jan. 20, 2010). Pursuant to Rule 16(b)(4), "[a] schedule may be modified only for good cause and with the judge's consent." "The good cause element requires the movant to demonstrate that, despite diligence, the proposed claims could not have been reasonably sought in a timely manner." *Venetec Int'l v. Nexus Med.*, 541 F. Supp. 2d 612, 618 (D. Del. 2010). "[T]he good cause standard under Rule 16(b) hinges on the diligence of the movant, and not on prejudice to the non-moving party." *Id.*

### 2. Analysis

Monec has not established good cause for its failure to amend prior to the expiration of the deadline set forth in the scheduling order because SEA and SEC's Rule 26 disclosures and their disclosures pursuant to the Delaware Default Standard for Discovery revealed STA's existence and role in "U.S. sales of accused products" and "U.S. marketing of accused

products."[1] (D.I. 201, Ex. 1 at 2, 5; Ex. 2 at 2) "The purpose of the initial disclosures provided for in Rule 26 is to prevent a party from being unfairly surprised by the presentation of new evidence." *Alza Corp. v. Andrx Pharms., LLC*, 2008 WL 1886042, at *2 (D. Del. 2008) (citing *Astrazeneca AB v. Mutual Pharm. Co.*, 278 F. Supp. 2d 491, 510 (E.D. Pa. 2003)). The initial disclosures, which were served on August 22, 2012, identified STA as having documents relating to "marketing, sales, revenue, and costs relating to the accused smartphones and tablet computers." (*Id.* at 5) Moreover, both the initial disclosures and the disclosures made pursuant to the Delaware Default Standard for Discovery[2] identified two witnesses from STA having knowledge of "U.S. sales of accused products" and "U.S. marketing of accused products." (*Id.*, Ex. 1 at 2; Ex. 2 at 2) As a result, Monec cannot rightfully claim that it "had no reason . . . to suspect that another subsidiary of Samsung, of which there are many, was responsible for the marketing and sales of Accused Products." (D.I. 188 at 6)

STA was the only entity among three Samsung entities named in the disclosures that had not been named as a defendant.[3] Monec could have explored the role of STA through discovery after reviewing the disclosures, but instead waited until well after the deadline for amending had

---

[1] Monec suggests that defendants had an obligation to notify Monec of STA's role in response to subsequent discovery requests. (D.I. 188 at 4) Aside from the fact that Monec has not shown that it directly requested information regarding STA or SEC's corporate structure during the discovery process, SEC and SEA had already disclosed the existence and role of STA in the initial disclosures in a manner sufficient to place Monec on notice.

[2] The disclosures made pursuant to the Delaware Default Standard for Discovery were served on September 10, 2012. (D.I. 201, Ex. 2 at 5)

[3] Monec stresses the fact that SEC has many U.S. subsidiaries, making it difficult to identify the proper parties to sue. (D.I. 207 at 1) However, SEA, SEC, and STA were the only Samsung entities identified in the initial disclosures. (D.I. 201, Ex. 1 at 2, 5)

5

passed. Monec offers no factual or legal support to demonstrate that SEC and SEA intentionally blocked or diverted Monec from learning of STA's potential exposure.[4]

In addition, Samsung's publicly-available 2011 annual report identifies STA as the only Samsung subsidiary in the Americas involved in the "Sale of Cell phone and WiMax" industry. (D.I. 201, Ex. 3 at 41) A June 29, 2010 press release issued by Samsung also identifies STA as a subsidiary that "researches, develops and markets wireless handsets and telecommunications products throughout North America" and is "the No. 1 mobile provider in the U.S." (D.I. 201, Ex. 4) This information was available to Monec either prior to or shortly after the commencement of the present litigation. Monec alleges that the annual report was insufficient to place it on notice of STA's role because "Samsung has taken the position that cell phones are not at issue." (D.I. 207 at 3) However, Monec has consistently maintained that cell phones are at issue in the present case. (D.I. 34 at ¶¶ 47-49, 51; D.I. 138 at 2)

The court therefore finds that Monec has not demonstrated good cause to add STA at this stage of the litigation. *See Paoli v. Stetser*, C.A. No. 12-66-GMS-CJB, 2013 WL 2154393, at *7 (D. Del. May 16, 2013) (concluding that proposed amendment "fail[ed] for lack of good cause alone" under Rule 16(b)). Moreover, SEC and SEA raise reasonable concerns regarding the

---

[4] Monec alleges that SEC and SEA should have disclosed the existence and role of STA in response to the following broadly-worded interrogatory:

> State with specificity each and every fact supporting or concerning the Samsung Defendants [sic] contention that the claim [sic] of the Reexamined Patent are not infringed by one or more of the Accused Products, as alleged in the First Affirmative Defense.

(D.I. 188 at 4) However, this is irrelevant in light of the fact that SEC and SEA expressly identified STA's role in U.S. marketing and sales of the accused products in the initial disclosures, which were served prior to the interrogatories.

prejudice that STA would suffer should Monec be permitted to amend the complaint at this late stage of the case.

Monec urges the court to follow *Invensas Corp. v. Renesas Electronics Corp.*, C.A. No. 11-448-GMS, 2013 WL 1776112 (D. Del. Apr. 24, 2013). Contrary to Monec's assertions, *Invensas* is not "directly on point" because the motion to amend in that case was filed on the last day permitted under the scheduling order. (D.I. 207 at 5) As a result, the Rule 15 standard applied as opposed to the more stringent good cause standard under Rule 16(b).

### B. Motion to Supplement the *Markman* Record

Following the *Markman* hearing, Monec moved this court to allow supplementation of the hearing record. (D.I. 212) By way of its motion, Monec seeks to introduce a one page document titled "Patent Description for Voyager" (the "Patent Description") which Monec alleges is highly relevant to its position that "displayed at a normal size" should be construed in accordance with its proposed construction. The Patent Description is dated November 7, 2001, more than two years after the filing of the application that led to the '678 patent. (*Id.* at Ex. A) It is well-established that claims should be given "the meaning that [they] would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005). The '678 patent application was filed on February 20, 1999. Nothing in the supplemental document submitted by Monec suggests that the description depicts the meaning of the invention at the time the patent application was filed, two years prior to the date the supplemental document was allegedly created.

Moreover, the Federal Circuit has held that "[t]he subjective intent of the inventor when

he used a particular term is of little or no probative weight in determining the scope of a claim (except as documented in the prosecution history)." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 985 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). Under *Markman*, the value of inventor statements is "limited by the fact that an inventor understands the invention but may not understand the claims, which are typically drafted by the attorney prosecuting the patent application." *Howmedica Osteonics Corp. v. Wright Med. Tech., Inc.*, 540 F.3d 1337, 1346-47 (Fed. Cir. 2008). Monec has not suggested that the Patent Description was among the documents submitted to the United States Patent and Trademark Office during prosecution of the patent, and the face of the '678 patent itself indicates that it was counsel, not the inventor, who drafted the claims of the patent. Therefore, the Patent Description has little probative value for purposes of determining the meaning of the claim language.

  Monec also does not allege that this evidence was unavailable to it prior to the *Markman* hearing. Rather, Monec contends that it "was located by Monec less than two (2) weeks ago as a result of a further review of archived files in connection with deposition preparation." (D.I. 212 at 1-2) The court is not inclined to permit post-*Markman* supplementation of the record to allow evidence that was previously available to counsel, but was overlooked. To rule otherwise would undermine the efforts of the court to reach a resolution on claim construction. *See Koken v. Black & Veatch Constr., Inc.*, 426 F.3d 39, 53 (1st Cir. 2005) (affirming district court's denial of motion to supplement the record after magistrate judge issued a recommended disposition on dispositive motions). Accordingly, Monec's motion for leave to supplement the *Markman* hearing record will be denied.

## IV. CONCLUSION

For the foregoing reasons, it is ORDERED that Monec's motion to amend (D.I. 188) and motion to supplement the *Markman* record (D.I. 212) are DENIED.

This Memorandum Order is filed pursuant to 28 U.S.C. § 636(b)(1)(A), Fed. R. Civ. P. 72(a), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Memorandum Order. Fed. R. Civ. P. 72(a). The objections and responses to the objections are limited to ten (10) pages each.

The parties are directed to the court's Standing Order In Non Pro Se Matters For Objections Filed Under Fed. R. Civ. P. 72, dated November 16, 2009, a copy of which is available on the court's website, www.ded.uscourts.gov.

Because this Memorandum Order may contain confidential information, it has been released under seal, pending review by the parties to allow them to submit a single, jointly proposed, redacted version (if necessary) of the Memorandum Order. Any such redacted version shall be submitted no later than **November 12, 2013** for review by the court. The court will subsequently issue a publicly-available version of its Memorandum Order.

Dated: November 5, 2013

Sherry R. Fallon
UNITED STATES MAGISTRATE JUDGE